**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE**

| | | |
|---|---|---|
| **CHRISTOPHER JOHN J. SAVOIE,** et al., | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) ) | **Case No. 3:10-cv-00327** **JUDGE TRAUGER** |
| **JUDGE JAMES G. MARTIN, III,** et al., | ) ) ) | |
| **Defendants.** | ) | |

**MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS
OF DEFENDANT JUDGE JAMES G. MARTIN, III**

Defendant Judge James G. Martin, III, in his individual and official capacity, by and through the undersigned, has moved to dismiss the Complaint filed against him pursuant to Fed. R. Civ. P. 12(b)(6). The grounds for this motion are as follows:

- The Complaint fails to state a claim upon which relief may be granted.

- The Complaint against Judge Martin in his individual capacity is barred by judicial immunity, under both 42 U.S.C. § 1983 and state tort theories.

- The Complaint against Judge Martin in his official capacity should be dismissed. It is barred by 11th Amendment immunity. Further, the State, sued through Judge Martin in his official capacity, is not a "person" who may be sued under 42 U.S.C. § 1983. The doctrine of sovereign immunity bars money damages against Judge Martin in his official capacity as to the state tort claims.

- The *Rooker-Feldman* doctrine bars any request for injunctive and declaratory relief that would alter any judgment in the *Savoie* case in state court. Alternatively, if the Complaint is asking the Court to intervene in any ongoing proceedings in that case, then the doctrine of abstention bars such relief.

Judge Martin does not waive any other defenses to which he may be entitled, including, but not limited to, the running of the one-year statute of limitations,[1] and any other immunities that he may have.[2]

In support of this motion, Judge Martin submits the following.

## PRELIMINARY STATEMENT

**A.        Complaint.**

The original complaint filed herein was filed on March 30, 2010. (Docket Entry No. 1, Complaint). The complaint served on Judge Martin is indicated to be the Amended Complaint on the docket sheet, which was filed on April 13, 2010. (Docket Entry No. 8, Amended Complaint). The Amended Complaint, Docket Entry No. 8, will be referred to herein as the Complaint.

Christopher John Savoie, the plaintiff, files this action individually on behalf of himself and as best friend of his minor children, IJS and RMS. (Complaint, introductory paragraph). The plaintiff files his complaint pursuant to 42 U.S.C. § 1983 with pendent state

---

[1]  The allegations in the Complaint pertain to events on or before March 30, 2009. While the original Complaint in this case was filed on March 30, 2010, the complaint served on Judge Martin was not filed until April 13, 2010. (*See* Complaint, Doc. # 8, 4/13/10).

[2]  As Judge Martin's motion and memorandum of law will show, he should be dismissed as to all state tort claims. However, Judge Martin has absolute immunity from tort claims as a state employee. Tenn. Code Ann. § 9-8-307(h). He does not waive this immunity.

claims against all defendants. He prays for declaratory and injunctive relief and for monetary damages. (Complaint, ¶¶ 1-6, pp. 2-3).

Judge James G. Martin, III is a Circuit Court Judge for the Twenty-First Judicial District in Williamson County, Tennessee. The Complaint names him as a defendant in his individual and official capacities.[3]

The plaintiff alleges that he is the father of IJS and RMS, and the ex-husband of Noriko Esaki Savoie (hereinafter "Ms. Savoie"). He resides in Williamson County, Tennessee. IJS, plaintiff's son, was born in 2000, and RMS, plaintiff's daughter, was born in 2002. The plaintiff alleges that the children are residents of Williamson County but they presently reside with their mother in Japan as they are, according to the Complaint, the victims of parental kidnapping. The plaintiff contends that he is now the sole legal and residential custodian of his children pursuant to an Order of the Chancery Court of Williamson County, Tennessee, dated August 17, 2009, in a case styled *Christopher Savoie v. Noriko Savoie*, No. 34775, which the plaintiff contends gives him standing to bring this action. He alleges that he is a United States citizen and a naturalized citizen of Japan. (Complaint, Parties and Jurisdiction, ¶¶ 1-5, pp. 3-4).

The plaintiff alleges that his ex-wife, Ms. Savoie, is the mother of his children. He alleges that she was a resident of Williamson County until August 2009, when she unlawfully relocated the children to Japan. He alleges that she is a fugitive from Tennessee and subject to a felony arrest warrant. Ms. Savoie is not a party to this litigation. (Complaint, Factual Background, ¶ 1, p. 4).

---

[3] The Complaint also names him in his official capacity as Tennessee Supreme Court Rule 31 Neutral and as a party to a Rule 31 mediation contract. Different counsel will address these allegations separately.

The plaintiff alleges that in June of 2008, Ms. Savoie moved to Franklin, Tennessee, but he and Ms. Savoie were living apart. In June of 2008, the plaintiff filed for divorce in the Chancery Court of Williamson County, and the case was assigned to Judge Easter. He asserts that Tennessee Supreme Court Rule 31 mediation is statutorily mandated for all contested divorce proceedings pursuant to Tenn. Code Ann. § 36-4-101(a). He contends that after multiple mediation sessions with then mediator, and now Judge Martin, he and Ms. Savoie settled their differences and entered into a Marital Dissolution Agreement (hereinafter "MDA") and a Permanent Parenting Plan (hereinafter "PPP"). An absolute divorce, incorporating the MDA and the PPP, was granted by Judge Timothy L. Easter on January 6, 2009. By the terms of that divorce settlement, Ms. Savoie was allowed to take the children to Japan during summer vacation but would maintain Tennessee residency and live no more than 100 miles from the plaintiff pursuant to Tenn. Code Ann. § 36-6-108. (Complaint, Factual Background, ¶¶ 2-5, pp. 4-5).

The plaintiff alleges that an affidavit from an expert on Japanese child abductions and family law was provided to then mediator, and now Judge Martin during the divorce mediation process. Judge Martin also received a copy of the case of *Takeda v. Takeda*, 2007 WL 4374036 (Tenn. Ct. App. 2007) during the mediation process. The plaintiff asserts that these documents showed the risk of harm by abduction of the children to Japan, a non-Hague Convention country. (Complaint, Factual Background, ¶¶ 6-7, p. 5).

After the final divorce had been entered, the plaintiff became concerned that Ms. Savoie intended to abduct the children to Japan permanently, based upon oral statements made by Ms. Savoie in front of the court-ordered parental coordinators, including defendant Celia Woolverton, and upon an email that he provided to Ms. Woolverton. In light of Ms.

Woolverton's alleged lack of action, the plaintiff sought a restraining order preventing Ms. Savoie from traveling to Japan with the children. At that time, the children's passports were being held by the court. On March 19, 2009, Williamson County Chancery Court Judge Bivins entered an emergency restraining order barring Ms. Savoie from traveling to Japan with the children. (Complaint, Factual Background, ¶¶ 8-11, pp. 5-6).

On March 30, 2009, a hearing was set with regard to the restraining order. The case was initially assigned to Judge Easter's docket as he was the judge in the divorce proceedings. The plaintiff alleges that it is unclear how the case was transferred from Judge Easter to Judge Martin. The plaintiff contends that upon having his case heard by Judge Martin, he was unknowingly subjected to a violation of Tennessee Supreme Court Rule 31, and Tenn. Code Ann. § 36-4-130[4], as well as his due process rights. He contends that he was not informed by his attorney or any defendant that Rule 31 expressly forbids mediators from acting in any judicial or quasi-judicial capacity in any matters on which they have served as Rule 31 neutral mediators. As such, the plaintiff contends that Judge Martin did not have jurisdiction over the parties, and could not serve as a neutral trier of fact, which plaintiff contends violated his right to due process. (Complaint, Factual Background, ¶¶ 12-15, pp. 6-7).

Paragraph 16 of the complaint states as follows: "Neither Dr. Savoie nor Ms. Esaki Savoie waived the confidentiality of the mediation proceedings in writing as required by Tenn. Code Ann. § 36-4-130; also a blatant violation of their rights to due process." (Complaint, Factual Background, ¶ 16, p. 7).

The plaintiff contends that in violation of Rule 31, Judge Martin heard the matter of the restraining order and passport possession that was originally scheduled for Judge Easter's

---

[4] Tenn. Code Ann. § 36-4-130 declares the confidentiality of information and documents in a mediation in a divorce action.

docket. He also contends that Judge Martin should have obtained a written release from the parties to the mediation before disclosing any information from the mediation. (Complaint, Factual Background, ¶¶ 17-19, pp. 7-8).

The plaintiff contends that in his judicial decision, Judge Martin utilized confidential information he gained from the mediation process. The plaintiff relies upon Exhibit B to his complaint, pages 115 to 123 of the transcript of the March 30, 2009 hearing. He contends that Judge Martin indicated in open court that he was relying on hearsay from the mediation process in arriving at his decision to allow Ms. Savoie access to the children's passports. The plaintiff also complains that Judge Martin questioned witnesses directly with leading questions based on confidential information from the mediation. He contends that Judge Martin stated in open court that there was a risk that the plaintiff's rights would be violated by the abduction of his children. (Complaint, Factual Background, ¶¶ 20-24, p. 8).

The plaintiff contends that Japan is not a party to the Hague Convention on the Civil Aspects of International Child Abduction, and is known as a haven for child abduction. He contends that Judge Martin was aware of this information from the mediation, and despite this, lifted the restraining order and "gave Ms. Esaki Savoie not only the Children's {sic} Japanese but also their United States Passports." (Complaint, Factual Background, ¶¶ 26-26, pp. 8-9).

The plaintiff alleges that on April 13, 2009, through counsel, he moved to vacate Judge Martin's order giving the passports to Ms. Savoie and lifting her travel restrictions. On April 23, 2009, he requested that Judge Martin recuse himself. On May 8, 2009, Judge Martin denied the request to vacate the order but granted the motion to recuse himself from further proceedings. (Complaint, Factual Background, ¶¶ 27-29, p. 9).

The plaintiff alleges that on August 12, 2009, Ms. Savoie left the United States with the children with no apparent intent to return. The plaintiff alleges that she has blocked all attempts for him to talk with the children on the telephone or visit them in Japan. Ms. Savoie has been charged with felony custodial interference under Tennessee law. The plaintiff has been awarded full custody of his children. The plaintiff alleges that he went to Japan in an attempt to reunite with his children in September of 2009 and was imprisoned for 18 days in Japan. (Complaint, Factual Background, ¶¶ 31-34, pp. 9-10).

The plaintiff sues Judge Martin under 42 U.S.C. § 1983 for allegedly violating his constitutional right to due process by presiding over the hearing in question after serving as a neutral mediator and using confidential information during the judicial hearing. He also sues Judge Martin for pendent state claims for violating his statutory duty. He sues Judge Martin for outrageous conduct. He prays for injunctive and declaratory relief, compensatory damages, attorney fees and costs. (Complaint, Counts I through V and prayer, pp. 10-14).

**B.**          **Transcript of Hearing on Temporary Restraining Order.**

As stated above, the plaintiff attached to his Complaint as Exhibit B pages 113 through 124 of the transcript of the hearing on the plaintiff's motion for a temporary restraining order that was held before Judge Martin on March 30, 2009. Attached to the Motion to Dismiss filed herein as Exhibit A is a complete copy of the transcript of the proceedings before Judge Martin on that date. (Motion to Dismiss of Defendant James G. Martin, III, Exhibit A). The transcript of that hearing will hereinafter be referred to as "Transcript".

The Transcript shows that that hearing began at 10:34 a.m. on March 30, 2009. (Transcript, p. 3). Virginia Story appeared as counsel for the plaintiff, who is also the plaintiff herein, and Marlene Moses appeared as counsel for the defendant, Ms. Savoie. (Transcript, p. 1).

Before taking testimony, Judge Martin addressed the issue of his prior involvement as a mediator:

> THE COURT:  Very well.
> Let me state for the record that I was the mediator in this case when I was in private practice.  It's my recollection that mediation was conducted in two different parts; I don't remember how many days, it may have been more than one day on each occasion.  I do not know what the ethical constraints are regarding that.  I served as neutral, and I'm perfectly willing to hear the matter now as judge unless either party has an objection.
> MS. MOSES:  No Your Honor.  We conferred with Judge Easter about it before he assigned it over to Your Honor, and ***Ms. Story and I both agreed that it would be in the clients' best interest, actually, if you would continue to be involved in this case, and we were pleased for you to be the judge on this case.***
> THE COURT:  That's fine.
> MS. STORY:  ***And we have no objection to you hearing this.***  This was a restraining order that actually Judge Bivins signed, and I believe it was because Judge Easter was on spring break that week, so –
> THE COURT:  I've read the petition that's been filed, and I went back and refreshed my memory on the terms of the parenting plan, so I'm familiar with where we are procedurally today.
> MS. STORY:  So my understanding is this would just be to determine whether or not that restraining order would stay in effect or be dissolved, based on the notes that the judge wrote on the restraining order?
> THE COURT:  Right; it just says that Ms. Savoie is restrained and enjoined from taking the children to Japan pending the hearing, and he set it for today at 9:00 a.m.
> MS. STORY:  So we're at kind of a limited issue, ***and my client has no objection to you hearing this matter, even though you were the mediator.***
> THE COURT:  Very well.

(Transcript of proceedings, pp. 3-5).

Thereafter, Judge Martin took testimony from the plaintiff herein, Diane Marshall, Ms. Savoie, and Celia Wolverton.  (Transcript, pp. 8-115).  The plaintiff testified that the passports for both children were with the Clerk and Master at that time.  (Transcript, p. 40).

At one point during the hearing, Judge Martin referenced his prior knowledge of the case due to his serving as the mediator:

Now, the Court is very sensitive to Dr. Savoie's concerns that Ms. Savoie may violate the terms of the Court order, move to Japan, take the children, and he would have limited ability to enforce the terms of the Court order under Japanese law.

And maybe this is highlighting why the Court shouldn't necessarily try cases that it was a mediator – *because I bring to this case a huge bank of knowledge regarding the background of both of these parties:* All of the circumstances relating to their marriage; the separation; the decision of Ms. Savoie to move here in June of 2007, as I recall; her being served with the papers, as I recall, the day after she came here; she came here knowing, in fact, that her husband wanted the divorce; Dr. Savoie's concerns that once she had money, that he – she would then have the ability to support herself in Japan, pursue a life in Japan.

And then, of course, all of the legal research that was done, including the "expert opinion" from the legal scholar in the northeast regarding Japanese law, and the failure of Japan to sign on to the Hague Convention, and the difficulty that parents have if children are taken to Japan in getting any kind of visitation rights. And there was a Canadian case, as I recall, that was also brought to the attention of the mediator at that point in time.

So maybe I have so much knowledge that I shouldn't be trying this case, but you all agreed for me to do it, and I can't just erase all that background of knowledge.

You know, at the end of the day, Dr. Savoie agreed to these terms, Ms. Savoie agreed to these terms, and the Court—or at that time the mediator—did not expect that this would be smooth, I didn't expect it would be free of conflict or difficulty, but the bottom line is that we have an agreement, and the agreement controls. The issue is whether there's some reason to modify it.

(Transcript, pp. 55-57).

Neither party raised any objection or asked that Judge Martin recuse himself before, during or after this recitation, or at other times during the hearing when Judge Martin referred to his previous role as mediator. (*See also, e.g.,* Transcript, pp. 115-19).

At the completion of the hearing, Judge Martin ruled in favor of dissolving the temporary restraining order. (Transcript, p. 122). However, the issue of whether Ms. Savoie would be allowed to go to Japan with her children was not resolved. Mediation on the issue of Ms. Savoie's travel to Japan with the children was set for May 27, 2009. (Transcript, p. 123).

Ms. Moses then advised the court that Ms. Savoie was scheduled to leave for Japan at the end of June 2009, and would need the children's passports in order to get the passport numbers for booking flights. Judge Martin directed that Ms. Savoie be given the passport numbers, but he specifically denied the request for the passports:

> THE COURT: And when did Ms. Savoie intend to go to Japan?
> MS. MOSES: I don't know if the exact date has been set.
> End of June. So we need to set that exactly.
> And then she needs to gets {sic} the passports, because she needs to have the passport numbers to be able to book the flights.
> THE COURT: *Well, she can get the passport numbers without getting the passports*; I mean, she can get the passport numbers today before she leaves here.
> MS. MOSES: That would be good.
> THE COURT: *She doesn't have to have the passports.*
> . . .
> THE COURT: Give her the numbers – here's what I want to do: Give her whatever numbers she needs to get her flights, and give her the opportunity to give Dr. Savoie the notice that she's required to give him. And then if you all can't resolve it in mediation, then I'll be happy to find a date and we'll have a further hearing. *I'm just not going to release the passports today.*
> MS. MOSES: Okay.
> THE COURT: Because I won't – the only issue before me today is one narrow issue, and that's the restraining order. I've resolved it. That's all that's before me.

(Transcript, pp. 123-26).

## ARGUMENT

I.        **THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.**

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court construes the Complaint in the light most favorable to the plaintiff, accepts all factual allegations as true, and determines whether the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *In re DeLorean Motor Co. v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993). Matters outside the pleadings are generally not considered by the Court in ruling on a 12(b)(6) motion. However, defendant may introduce certain pertinent documents if the plaintiff fails to do so. *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Id.* Therefore, the Sixth Circuit has adopted the rule that "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim.'" *Id.* (quoting *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

In this case, the allegations in the Complaint pertain to a March 30, 2009 hearing before Judge Martin on the issue of whether a restraining order against Ms. Savoie should stay in effect to prevent her from leaving the county with the Savoie children. Although the entire hearing was transcribed, the Complaint only paraphrases Judge Martin's remarks, and then picks out only excerpts from the actual Transcript to include as an exhibit. However, the Transcript should speak for itself. A copy of the entire Transcript is attached, including the Complaint's selected portions.

As shown below, the entire Transcript shows that allegations against Judge Martin in the Complaint have no basis in fact. The facts show that the parties consented to having Judge Martin hear the issue of the restraining order, even though he had previously been a mediator on the case. Further, the parties raised no objection to his reliance on information gained in his capacity as a mediator, even after he had acknowledged on the record that he had considerable background information about the parties. Most importantly, Judge Martin never authorized the release of the Savoie children's passports. The plaintiff has no grounds for suing Judge Martin.

A.      **The parties consented to have Judge Martin hear the issue of the restraining order on March 30, 2009, even though he had previously been a mediator in the case.**

The Complaint alleges that Judge Martin violated Rule 31 of the Tennessee Supreme Court by hearing the restraining order issue on March 30, 2009, even though he had previously acted as mediator in the case, and that he relied on confidential information from an earlier mediation in reaching his decision on the restraining order. (*See* Complaint, ¶¶ 17-20). However, the Transcript shows that the parties had a full and complete discussion with Judge Martin on the record about Judge Martin's previous role as mediator, and about whether he should hear the case as judge. Moreover, it shows that counsel for the respective parties, Ms. Story for now-plaintiff Savoie, and Ms. Moses for Ms. Savoie, had no objection, and, in fact, consented, to having him act as the judge in the matter before the court:

> THE COURT: Very well.
> Let me state for the record that I was the mediator in this case when I was in private practice. It's my recollection that mediation was conducted in two different parts; I don't remember how many days, it may have been more than one day on each occasion. I do not know what the ethical constraints are regarding that. I served as neutral, and I'm perfectly willing to hear the matter now as judge unless either party has an objection.
> MS. MOSES: No Your Honor. We conferred with Judge Easter about it before he assigned it over to Your Honor, and ***Ms. Story and I both agreed that it***

*would be in the clients' best interest, actually, if you would continue to be involved in this case, and we were pleased for you to be the judge on this case.*

THE COURT: That's fine.

MS. STORY: *And we have no objection to you hearing this.* This was a restraining order that actually Judge Bivins signed, and I believe it was because Judge Easter was on spring break that week, so –

THE COURT: I've read the petition that's been filed, and I went back and refreshed my memory on the terms of the parenting plan, so I'm familiar with where we are procedurally today.

MS. STORY: So my understanding is this would just be to determine whether or not that restraining order would stay in effect or be dissolved, based on the notes that the judge wrote on the restraining order?

THE COURT: Right; it just says that Ms. Savoie is restrained and enjoined from taking the children to Japan pending the hearing, and he set it for today at 9:00 a.m.

MS. STORY: *So we're at kind of a limited issue, and my client has no objection to you hearing this matter, even though you were the mediator.*

(Transcript of proceedings, pp. 3-5, emphasis added).

Judge Martin made a full disclosure on the record of what the parties already knew: that he had been a mediator on this case. He heard the case on March 30, 2009 based on the representations of the parties' counsel to him, and with plaintiff Savoie present, that they were "pleased for [him] to be the judge in this case." Judge Martin had every right to rely on the parties' consent on the record when he heard this case. Plaintiff Savoie has no basis to claim his rights were violated or that he was injured by any negligence of Judge Martin.

13

**B.**     **The parties did not object to Judge Martin's reliance on his information about the case gained as mediator.**

Even though the Transcript shows that the parties fully consented to Judge Martin acting as the judge in the March 30, 2009 hearing on the restraining order, the Complaint alleges that the parties had not waived the confidentiality of the mediation proceedings in writing. (*See* Complaint, ¶ 16). However the Transcript shows that Judge Martin made it very clear on the record that he was relying on his prior knowledge as mediator, and even recounted what he recalled. It further shows that the parties voiced no objection, and did not withdraw their consent to his hearing the issue:

> Now, the Court is very sensitive to Dr. Savoie's concerns that Ms. Savoie may violate the terms of the Court order, move to Japan, take the children, and he would have limited ability to enforce the terms of the Court order under Japanese law.
>
> And maybe this is highlighting why the Court shouldn't necessarily try cases that it was a mediator – *because I bring to this case a huge bank of knowledge regarding the background of both of these parties*: All of the circumstances relating to their marriage; the separation; the decision of Ms. Savoie to move here in June of 2007, as I recall; her being served with the papers, as I recall, the day after she came here; she came here knowing, in fact, that her husband wanted the divorce; Dr. Savoie's concerns that once she had money, that he – she would then have the ability to support herself in Japan, pursue a life in Japan.
>
> And then, of course, all of the legal research that was done, including the "expert opinion" from the legal scholar in the northeast regarding Japanese law, and the failure of Japan to sign on to the Hague Convention, and the difficulty that parents have if children are taken to Japan in getting any kind of visitation rights. And there was a Canadian case, as I recall, that was also brought to the attention of the mediator at that point in time.
>
> So maybe I have so much knowledge that I shouldn't be trying this case, but you all agreed for me to do it, and I can't just erase all that background of knowledge.
>
> You know, at the end of the day, Dr. Savoie agreed to these terms, Ms. Savoie agreed to these terms, and the Court—or at that time the mediator—did not expect that this would be smooth, I didn't expect it would be free of conflict or difficulty, but the bottom line is that we have an agreement, and the agreement controls. The issue is whether there's some reason to modify it.

(Transcript of proceedings, pp. 55-57).

When the parties consented to having Judge Martin hear the case, it was in light of his previous role as mediator. It is not surprising that when Judge Martin reviewed what he learned as mediator, the parties offered no objection. Plaintiff Savoie has no claim for violation of his civil rights or for any negligence by Judge Martin.

**C.      Judge Martin never authorized release of the Savoie children's passports.**

The Complaint claims that Judge Martin gave Ms. Savoie the children's Japanese and United States passports at the hearing. (*See* Complaint, ¶ 21). But, in fact, Judge Martin declared that he was ***not*** going to release the passports that day:

> And it's clear to this Court that it's in the best interest of these children that these children – and I'll say it again – have a relationship with their father, and that they also understand their Japanese culture and heritage, and it's part of their makeup, and that they understand their American culture and heritage as part of their makeup.
>
> So based on the limited issue that's before me, the Court's going to dissolve the restraining order.
>
> When is mediation scheduled?
>
> MS. STORY: May 27th.
>
> THE COURT: And when did Ms. Savoie intend to go to Japan?
>
> MS. MOSES: I don't know if the exact date has been set.
>
> End of June. So we need to set that exactly.
>
> And then she needs to gets {sic} the passports, because she needs to have the passport numbers to be able to book the flights.
>
> THE COURT: ***Well, she can get the passport numbers without getting the passports;*** I mean, she can get the passport numbers today before she leaves here.
>
> MS. MOSES: That would be good.
>
> THE COURT***: She doesn't have to have the passports.***
>
> MS. MOSES: And then she needs the passports before she leaves.
>
> THE COURT: But she's going to have to have the passports before she departs.
>
> MS. MOSES: Yes, Sir.
>
> THE COURT: I have Williamson County civil non-jury days; this would have been, in fact, one of those days if I had anything set. I didn't have anything set and, or course, Judge Easter has a heavy docket and I just told him I would take his docket, to the extent he needed for me to do so.
>
> So if we need a hearing before she leaves, I'll be happy to schedule the hearing for you all. Or if you would like to have Judge Easter hear it, that's fine

15

with me; you're not going to hurt my feelings – I'll do whatever you all need to do – and find a date and time to have a hearing before Ms. Savoie leaves, assuming there's some issue that remains after the mediation on May the 27th.

               . . .

     THE COURT:  Give her the numbers – here's what I want to do:  Give her whatever numbers she needs to get her flights, and give her the opportunity to give Dr. Savoie the notice that she's required to give him.  And then if you all can't resolve it in mediation, then I'll be happy to find a date and we'll have a further hearing.  ***I'm just not going to release the passports today.***
     MS. MOSES:  Okay.
     THE COURT:  Because I won't – the only issue before me today is one narrow issue, and that's the restraining order.  I've resolved it.   That's all that's before me.

(Transcript, pp. 122-26, emphasis added).

Judge Martin only permitted Ms. Savoie to have the passport numbers so she could make travel arrangements.  He did not give her the passports, and the issue of whether she would be allowed to go to Japan with the children was not resolved at the hearing.  He told the parties that they could come to court with any unresolved issues before she would be allowed to leave with the children.

The Transcript contradicts the Complaint's allegations against Judge Martin.  The allegations in the Complaint are vague and conclusory and leave many causation strings untied, but, most importantly, the allegations are simply not true.  *All* claims against Judge Martin both individually and in his official capacity, and under both federal law and state law, should be dismissed.


II.       **THE DOCTRINE OF JUDICIAL IMMUNITY BARS ALL MONEY DAMAGES AGAINST JUDGE MARTIN UNDER BOTH 42 U.S.C. § 1983 AND STATE TORT THEORIES.**

The United States Supreme Court has long recognized common law judicial immunity for judicial acts.  *See Wilkes v. Dinsman*, 7 How. 89, 48 U.S. 89 (1859); *Randall v.*

*Brigham*, 74 U.S. 523 (1869). In 1872, the Supreme Court declared that it was a "general principle of the highest importance...that a judicial officer, ...[should] be free to act upon his own convictions, without apprehension of personal consequences to himself." *Bradley v. Fisher*, 13 Wall. 335, 347, 80 U.S. 335 (1872). The doctrine of judicial immunity is justified "'by a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability. *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997) *quoting Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435 (1993).

The Supreme Court has specifically held that state judges are absolutely immune from liability under 42 U.S.C. § 1983. *See Briscoe v. LaHue*, 460 U.S. 325, 334 (1983). *See also Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004). Further, Tennessee state courts adhere to the doctrine of judicial immunity as to any tort claims under state law. In *Heath v. Cornelius*, 511 S.W.2d 683 (Tenn. 1974), the Tennessee Supreme Court declared that State courts have followed the rule of judicial immunity since 1902 and the Tennessee Supreme Court's decision in *Webb v. Fisher*, 109 Tenn. 701, 72 S.W. 110 (1902). *Id.* at 685-86. The Tennessee Supreme Court further declared: "The rule is that a civil action for damages will not lie against a judge of a court of general jurisdiction for his judicial acts if such acts were committed within the jurisdiction of his court. If done within his jurisdiction, neither the correctness of nor motive behind the acts affects the immunity." *Id.* Tennessee courts have consistently following this rule. *See, e.g., Harris v. Witt*, 552 S.W.2d 85, 86 (Tenn. 1977); *Graham v. Dodson*, 830 S.W.2d 70, 71 (Tenn. Ct. App. 1991).

The protections of absolute immunity are available to Judge Martin in the performance of his judicial functions. As will be shown, he has absolute immunity in this case.

Judge Martin was performing a judicial function when he presided over the March 30, 2009 hearing.  A judicial function is one normally performed by a judge.  *Stump v. Sparkman*, 435 U.S. 349, 362 (1978).  A judge's acts to resolve disputes between parties who have invoked the judge's jurisdiction are the "touchstone" for judicial immunity.  *See Brookings v. Clunk*, 389 F.3d 614, 618 (6th Cir. 2004).  Presiding over a hearing on a restraining order, as Judge Martin did, was a basic judicial act.  He has absolute immunity against all liability for performing that function.[5]

The Complaint tries to avoid Judge Martin's absolute immunity by contending that he did not have jurisdiction over the parties because he had previously been a mediator in the case.  (*See* Complaint, ¶ 15).  It incorrectly argues that Rule 31 of the Rules of Tennessee Supreme Court "expressly forbid[s]" Rule 31 mediators from acting in any judicial or quasi-judicial capacity on any matters for which they have previously served as a Rule 31 Neutral.  (*See* Complaint, ¶ 15).  This is not true.  Rule 31(c)(1) states that Rule 31 Neutrals shall "*refrain* from participation as attorney, advisor, judge, guardian, ad litem, master, or in any other judicial or quasi-judicial capacity in the matter in which the  Rule 31 ADR Proceeding was conducted."  The verb "refrain" means "[t]o restrain or hold back; curb."  The American Heritage Dictionary 1039 (2d College Edition 1985).  It does *not* mean "expressly forbid."

---

[5] Judge Martin also has absolute judicial immunity for his acts as the mediator in this case.  Rule 31 declares:

> Activity of Rule 31 Neutrals in the course of Rule 31 ADR proceedings shall be deemed the performance of a judicial function and for each such acts Rule 31 Neutrals shall be entitled to judicial immunity.

Tenn. R.S.Ct. 31, § 12.

The principles of judicial immunity that give Judge Martin absolute immunity as judge also give him absolute immunity as mediator.  He should be dismissed as to all claims against him.

Additionally, the Complaint is wrong in its conclusion that Judge Martin somehow did not have jurisdiction over the parties based on Rule 31. There is nothing in Rule 31 that limits a judge's jurisdiction. Judge Martin always had the full jurisdiction of Circuit Court Judge, and Rule 31 does not limit that.

Moreover, the Complaint cites no authority, and the undersigned is aware of none to the effect that the requirements of Rule 31 embody federal or state civil rights, or give rise to a private right of action.[6] The Tennessee Supreme Court rules of practice are for the better disposal of business before that court. *See* Tenn. Code Ann. § 16-3-401. They are not for the purpose of enlarging any substantive rights. *See* Tenn. Code Ann. § 16-3-403.

Further, the Complaint's Rule 31 arguments are not sufficient to overcome Judge Martin's absolute immunity. In finding immunity, courts look to the nature and function of the act, not the act itself. *See Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004). The function that Judge Martin was performing was a judicial one - presiding over a motion for restraining order. That is enough to entitle him to absolute immunity. That immunity is absolute.

When Judge Martin heard the parties on the issue of a restraining order, he was performing a judicial act that he had authority to hear as a Judge of the State Circuit Court. The State Circuit Court is a court of general jurisdiction. *See* Tenn. Code Ann. § 16-10-101. The parties in *Savoie* submitted to the jurisdiction of the Circuit Court. Plus, they gave their full consent to having Judge Martin hear the issue before that court. The performance of his judicial functions are the touchstone of his judicial immunity. Judge Martin should be dismissed.

---

[6] The same is true for Tenn. Code Ann. § 36-4-130. Nothing in that statute implies any cause of action arising from its own provisions.

III.        THE ELEVENTH AMENDMENT BARS ALL MONEY DAMAGES
            AGAINST JUDGE MARTIN IN HIS OFFICIAL CAPACITY.
            FURTHER, THE STATE, SUED THROUGH JUDGE MARTIN IN
            HIS OFFICIAL CAPACITY, IS NOT A "PERSON" WHO MAY BE
            SUED UNDER 42 U.S.C. § 1983.  THE DOCTRINE OF
            SOVEREIGN IMMUNITY BARS MONEY DAMAGES AGAINST
            JUDGE MARTIN IN HIS OFFICIAL CAPACITY AS TO THE
            STATE TORT CLAIMS.

A.          **The Eleventh Amendment bars money damages against Judge Martin
            in his official capacity.**

          The Complaint also attempts to sue Judge Martin in his official capacity as

Circuit Court Judge for the State of Tennessee.  But the Eleventh Amendment bars suits

for money damages against the State.  The Eleventh Amendment literally forbids suits by

citizens of one state against another state.  But the Supreme Court has construed it to bar

actions by citizens against their own state in federal court.  *Hans v. Louisiana*, 134 1

(1890).

          In particular, the Supreme Court has declared that civil rights claims do

not abrogate Eleventh Amendment immunity.  *Quern v. Jordan*, 440 U.S. 332 (1979).

Moreover, federal courts in Tennessee have ruled that Tennessee has not waived its

immunity under the Eleventh Amendment with respect to civil rights suits.  *See American

Civil Liberties Union v. Tennessee*, 496 F.Supp. 218 (M.D. Tenn. 1980).  The present

case is exactly the type of case for which the Eleventh Amendment provides immunity to

the State for money damages against an official sued in his official capacity.

**B.**      **The State, sued through Judge Martin in his official capacity, is not a "person" who may be sued under 42 U.S.C. § 1983.**

Further, it is proper to dismiss this claim for money against the State's

Judge of the Circuit Court because the State is not a "person" within the meaning of 42

U.S.C. §1983. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Judge

Martin may not be sued for money damages in his official capacity in an action under

§1983. In *Will*, the Supreme Court made it clear that "a suit against a state official in his

or her official capacity is not a suit against the official but rather is a suit against the

official's office. *Id.* "As such, it is no different from a suit against the State itself." *Id.* "

Neither the State nor its officials acting in their official capacities are "persons" under §

1983." *Id.* All claims under § 1983 for money damages against Judge Martin in his

official capacity should be dismissed.

**C.**      **The doctrine of sovereign immunity bars money damages against Judge Martin in his official capacity for tort claims under state law.**

A suit against a state official in his official capacity is a "suit against the

state." *Cox v. State of Tennessee*, 21 McCanless 644, 648, 399 S.W.2d 776, 778 (Tenn.

1965). Suits against the State of Tennessee are barred by the doctrine of sovereign

immunity. Tenn. Const. art. I, § 17; Tenn. Code Ann. § 20-13-102 Judge Martin has

already shown that he should be dismissed in *both* his individual and official capacities to

all state tort claims. (*See supra*, grounds in Sections I and II). The doctrine of sovereign

immunity is yet one more reason for dismissal.

**IV.**            **THE *ROOKER-FELDMAN* DOCTRINE BARS ANY REQUEST FOR INJUNCTIVE AND DECLARATORY RELIEF THAT WOULD ALTER ANY JUDGMENT IN THE *SAVOIE* CASE IN STATE COURT. ALTERNATIVELY, IF THE COMPLAINT IS ASKING THE COURT TO INTERVENE IN ANY ONGOING PROCEEDINGS IN THAT CASE, THEN THE DOCTRINE OF ABSTENTION BARS SUCH RELIEF.**

The Complaint vaguely asks for injunctive and declaratory relief, but offers no further explanation. It can only be surmised that the Complaint is seeking some kind of relief with regard to the underlying divorce case. The Court should deny any such relief.

**A.**            **Under the *Rooker-Feldman* doctrine, only the Supreme Court has jurisdiction to change the judgment in the Savoie case in state court.**

If the Complaint is asking for injunctive and declaratory relief that would alter the judgment in the *Savoie* case in state court, then the *Rooker-Feldman* doctrine bars such relief in the District Court. Federal courts lack jurisdiction to review a case litigated and decided in state court because only the United States Supreme Court has jurisdiction to change state court judgments. This is the "*Rooker-Feldman* doctrine," named after *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983). *See also Gottfried v. Medical Planning Services, Inc.*, 142 F.3d 326, 330 (6th Cir. 1998), *cert. denied*, 525 U.S. 1041 (1998); *United States v. Owens*, 54 F.3d 271, 274 (6th Cir. 1995), *cert. denied*, 516 U.S. 983 (1995). *See also,* 28 U.S.C. § 1257. The principle underlying the *Rooker-Feldman* doctrine is equally true in constitutional cases brought under 42 U.S.C. §1983, since federal courts must give "full faith and credit" to state court judicial proceedings. *Gottfried*, 142 F.3d at 330 (citing 28 U.S.C. §1738).

The doctrine is a combination of the abstention and *res judicata* doctrines. *Owens*, 54 F.3d at 274. It stands for the proposition that a federal district court may not hear an appeal of a case already litigated in state court. *Id.*; *Gottfried*, 142 F.3d at 330. This is true even

though the state court judgment may have been erroneous. *In re Sun Valley Foods Co. v. Detroit Marine Terminals, Inc.*, 801 F.2d 186, 189 (6th Cir. 1986).

That court record in the *Savoie* case, including any order by Judge Martin, is fully reviewable by the Tennessee appellate courts. There is no basis for federal intervention when the appellate process offered by the Tennessee Rules of Appellate Procedure can provide a full review. This is exactly the type of case for which dismissal under the *Rooker-Feldman* doctrine is proper.

**B.      Under the doctrine of abstention, the Court should deny any injunctive or declaratory relief as to ongoing state court proceedings.**

If the Complaint is asking for injunctive and declaratory relief in any ongoing proceedings in the state *Savoie* case, then the doctrine of abstention should bar such relief. It is a basic tenet of comity and federalism that federal courts refrain from interfering with pending state judicial proceedings absent extraordinary circumstances. *Younger v. Harris*, 401 U.S. 37, 43-44 (1971). The *Younger* doctrine of abstention enjoins a federal court from granting relief against a pending state criminal proceeding that implicates important state interests. *Id.* But the doctrine applies in state civil matters as well. *Loch v. Watkins*, 337 F.3d 574, 579 (6th Cir. 2003). Further, it applies when the defendant is a state court judge, and the relief sought is an injunction against state court proceedings. *See Lamb Enterprises v. Judge George Kiroff*, 549 F.2d 1052, 1055-56 (6th Cir. 1977), *cert. denied*, 431 U.S. 968 (1977).

The vital consideration behind the *Younger* doctrine of nonintervention is the concept of comity. This is "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance in the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Younger*, 401 U.S. at 44. *See also*

*Middlesex County Ethics Comm'n v. Garden State Bar Association*, 457 U.S. 423, 431 (1982).

*Younger* abstention applies whenever there is a currently pending state case proceeding that involves an important state interest, and that provides the plaintiff an adequate opportunity to raise constitutional claims. *Middlesex County Ethics Comm'n*, 457 U.S. at 432. If the request for injunctive and declaratory relief in the present Complaint is asking the Court to intervene in ongoing proceedings in the state case, then the Court should deny such relief because it involves a very important state interest – the dissolution of the Savoie marriage and provision for the safety and well-being of the children. The State has a definite interest in the matter of domestic relations, particularly when it involves the interests of children. *Bauer v. Bauer*, 184 Tenn. 217, 223, 197 S.W.2d 892, 894 (1946). Federal courts recognize the exclusive jurisdiction of state courts over matters involving domestic relations. *See, e.g., Ankenbrandt v. Richards*, 504 U.S. 689, 703-04 (1992). Traditional domestic relations issues are an important state interest giving rise to abstention under *Younger*. *Kelm v. Hyatt*, 44 F.3d 415, 420 (6th Cir. 1995).

Further the Tennessee appellate courts provide plaintiff Savoie an opportunity to raise any constitutional claims. State court judges are bound by the United States Constitution. *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987). They are fully able to protect the interests of a federal § 1983 plaintiff such as Savoie. *See Kelm,* 44 F.3d at 420. The principles of abstention in *Younger* should now bar any request for this Court to intervene in any ongoing state court proceedings.

All requests for injunctive and declaratory relief in this case should be denied.

## CONCLUSION

Defendant Judge James G. Martin, III asks that he be dismissed both individually and in his official capacity as to all claims for money damages and injunctive and declaratory relief.

Respectfully submitted,

ROBERT E. COOPER, Jr.
Attorney General and Reporter


s/Martha A. Campbell
MARTHA A. CAMPBELL #14022
Associate Deputy Attorney General

s/Mary M. Bers
MARY M. BERS #013159
Senior Counsel
Civil Rights & Claims Division
Cordell Hull Building, Second Floor
P. O. Box 20207
Nashville, TN 37214
(615) 532-2558

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2010, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

Timothy A. Tull BPR#281113
Tull Law Firm, PLLC
5083 Main Street
Spring Hill, Tennessee 37174

Garry K. Grooms #012647
Stites & Harbison, PLLC
SunTrust Plaza
401 Commerce Street, Suite 800
Nashville, Tennessee 37219-2376

s/ Martha A. Campbell
MARTHA A. CAMPBELL
TBPR# 14022
Office of the Attorney General
P.O. Box 20207
Nashville, TN 37202
(615) 532-2558