**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER JOHN SAVOIE, et al.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:10-cv-00327** |
| | ) | **JUDGE TRAUGER** |
| **JUDGE JAMES G. MARTIN, III, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF STITES & HARBISON,
PLLC AND JAMES G. MARTIN, III AS MEDIATOR, TO DISMISS**

Defendants Stites & Harbison, PLLC and James G. Martin, III, in his capacity as a Rule 31 mediator and/or as a member of Stites & Harbison, PLLC ("Defendants")[1] have moved the court to dismiss the claims in this action pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. This memorandum is submitted in support of Defendants' motion.

## I.  INTRODUCTION

The plaintiff in this action, Christopher John Savoie ("Plaintiff") has filed this complaint against a Williamson County judge, the law firm with whom the judge was associated before he was appointed to the court and a psychotherapist/licensed social worker serving as a court ordered parental coordinator under a court ordered parenting plan. Plaintiff's complaint challenges actions taken in his divorce case, which, he claims, ultimately permitted his former spouse to travel to her home in Japan with the couple's two minor children. When the wife did not return to the United States with the children, the Plaintiff responded by filing this lawsuit

---

[1] Mr. Martin is being separately represented by the Tennessee Attorneys General's Office as to claims against him in his capacity as a judge.

alleging, in essence, that the Tennessee court system is responsible for his wife's actions. His claims include claims for violations of 42 U.S.C. § 1983, negligence, outrageous conduct and breach of contract. At its core, Plaintiff's complaint against Judge Martin is that he presided over a single hearing in Plaintiff's divorce case in which he dissolved a temporary restraining order that ordered Plaintiff's ex-wife not to travel to Japan with her minor children. Plaintiff claims that Judge Martin should not have presided over the hearing because he had served as a mediator in the parties' divorce action prior to becoming a judge. Plaintiff also claims that in making the ruling, Judge Martin improperly relied upon and used confidential information that he had obtained in the mediation.

The Plaintiff has omitted a number of key facts relevant to his claims which are apparent from even a cursory review of the court record in the underlying divorce action, of which this court may take judicial notice without converting this motion to a summary judgment motion under Fed. R. Civ. P. 56.[2] These facts include the following:

- At the time of the hearing over which Judge Martin presided, Plaintiff was well aware that Judge Martin had conducted a Rule 31 mediation, and expressly waived any conflict or disqualification that might otherwise exist. Not only did the Plaintiff fail to object to Judge Martin's hearing the motion but he, through counsel, requested that Judge Martin hear the motion when the judge to whom the case was originally assigned could not.

- In the marital dissolution agreement and permanent parenting plan entered in his divorce case, Plaintiff expressly agreed to allow former his wife to travel with his minor children to Japan. In his order, Judge Martin simply ruled that Plaintiff had not presented evidence sufficient to warrant an injunction against this agreed upon travel.

- After the hearing over which Judge Martin presided and after Judge Martin had recused himself from the case, Plaintiff abandoned his request to modify the permanent parenting plan and entered into an agreed order that reaffirmed his agreement to permit his former wife to travel to Japan with his minor children.

- Judge Martin's actions did not allow, permit or have any effect on Mrs. Savoie's

---

[2] See discussion at pp. 9-10 herein.

travel to Japan with her minor children. At the time of the hearing, the Clerk and Master of the Court held the passports of the minor children and Judge Martin did not order that the passports be returned. Indeed, Mrs. Savoie did not travel to Japan with her minor children until *after* Judge Martin had recused himself from the case, *after* Dr. Savoie abandoned his request to modify the permanent parenting plan and reaffirmed his agreement allowing the travel, and *after* the passports were released to her.

Although this court may be sympathetic to Plaintiff's current plight, Plaintiff's circumstances provide no excuse for his baseless, meritless attack on a Tennessee judge and his former law firm. To the extent that the decision to allow his minor children to travel with their mother to Japan was a bad one, the decision was Plaintiff's decision, evidenced by his agreement in the original permanent parenting plan and reaffirmed months later, not the decision by Judge Martin to dissolve an *ex parte* temporary restraining order.

Although all of these facts – which are undisputed and established by the court record in the underlying divorce action – may be important, this court need not reach them because Plaintiff's claims fail at the outset for two separate and independent reasons: first, Mr. Martin and his firm are immune from liability for actions taken in connection with the Rule 31 mediation; and second, it is clear from the allegations of the complaint that Plaintiff's complaint has nothing to do with any conduct of Judge Martin prior to his departure from the firm and his appointment to the court, and certainly not with Stites & Harbison, PLLC, Judge Martin's former law firm. Plaintiff's complaint relates solely to conduct taken by Mr. Martin as a judge after he was appointed to the court.

For all of these reasons, Defendants respectfully request that the complaint against Stites & Harbison, PLLC and James G. Martin, III, as Mediator, be dismissed in their entirety.

## II.  ALLEGATIONS OF THE COMPLAINT[3]

1.      In June of 2008, Plaintiff filed for divorce in the Chancery Court of Williamson County, Tennessee and the case was assigned to Judge Timothy Easter. (Amended Complaint, Factual Background ¶ 2.)

2.      Pursuant to T.C.A. § 36-4-131, mediation is statutorily mandated for certain contested divorce proceedings in Tennessee. (Amended Complaint, Factual Background ¶3.)

3.      On August 4, 2008, Judge Easter entered an order directing Mr. and Mrs. Savoie to mediation before James G. Martin, III.[4]

4.      Dr. and Mrs. Savoie thereafter attended multiple mediation sessions with Mr. Martin. (Amended Complaint, Factual Background ¶ 4.)

5.      After multiple mediation sessions, Dr. and Mrs. Savoie settled their differences by entering into a marital dissolution agreement ("MDA") and permanent parenting plan ("PPP"). An absolute divorce incorporating the MDA and PPP into the final order was granted by Judge Easter on January 6, 2009. (Amended Complaint, Factual Background ¶4.)[5]

6.      The MDA/PPP stated that Mrs. Savoie would be allowed to take the children to Japan during summer vacation, but that she was to maintain Tennessee residency and live no more than one hundred (100) miles from the other parent. (Amended Complaint, Factual Background ¶5, Exhibit 2 ¶ I-4.)

---

[3] In this complaint, Plaintiff references, directly or indirectly, various pleadings, orders and transcripts entered in the underlying divorce action, but does not attach them to his complaint.  It is clear that this court may consider documents attached to or referenced in the complaint without converting this motion into a motion for summary judgment.  The court may also take judicial notice of public records, including judicial proceedings, in considering a Rule 12 motion.  See discussion herein at p. 10.  For the convenience of the court, various documents referenced in Plaintiff's complaint are attached as exhibits to Defendants' motion to dismiss.

[4] A true and correct copy of the order is attached as Exhibit 1 to Defendants' motion to dismiss.

[5] A true and correct copy of excerpts from the final divorce decree and PPP is attached as Exhibit 2 to Defendants' motion to dismiss.

7.      On November 10, 2008 Governor Phil Bredeson appointed James G. Martin, III as a Judge of the 21st Judicial District, including Williamson County, Tennessee. The appointment was effective on January 1, 2009.

8.      On March 19, 2009, Dr. Savoie filed a petition to modify the PPP to, among other things, prevent Mrs. Savoie from taking the minor children to Japan. In connection with the petition, Dr. Savoie sought a temporary restraining order preventing Mrs. Savoie from traveling with the children pending a hearing on the petition. At that time, the minor children's passports were being held by the court. (Amended Complaint, Factual Background ¶ 10; Transcript of Proceedings Before Williamson Chancery Court ("Transcript") at pp. 6-8.)[6]

9.      On March 19, 2009, Judge Jeffrey Bivins entered a temporary restraining order that enjoined Mrs. Savoie from taking the children to Japan pending a hearing set for 9:00 a.m. on Tuesday, March 30, 2009. (Amended Complaint, Factual Background ¶¶ 11-12.)

10.     On March 30, 2009, the case was assigned to Judge Martin for hearing. (Amended Complaint, Factual Background ¶ 13.)

11.     At the beginning of the March 30, 2009 hearing, Judge Martin advised both parties that he was willing to hear the matter unless either of them had an objection. The transcript from the hearing reflects the following exchange:

> The Court: Let me state for the record that I was the mediator in this case when I was in private practice … I served as neutral, and I am perfectly willing to hear the matter now as a judge unless either party has an objection.
>
> Ms. Moses: No, your honor. We conferred with Judge Easter about it before he assigned it over to your honor, and Ms. Story and I both agree that it would be in the clients' best interests, actually, if you would continue to be involved in this case, and we were pleased for you to be the judge on this case.

---

[6] A true and correct copy of the Transcript is attached as <u>Exhibit A</u> to the Motion to Dismiss of Defendant James G. Martin, III (Document 20).

The Court: That's fine.

Ms. Story: **And we have no objection to you hearing this**. This was a restraining order that actually Judge Bivins signed, and I believe it was because Judge Easter was on spring break that week…

Ms. Story: So my understanding is that would just be to determine whether or not that restraining order would stay in effect or be dissolved, based on the notes that the judge wrote on the restraining order?

The Court: Right, it just says that Mrs. Savoie is restrained and enjoined from taking the children to Japan pending the hearing, and he set it for today at 9:00 a.m.

Ms. Story: So we are at kind of a limited issue, and my client has no objection to your hearing this matter, even though you were the mediator.

The Court: Very well.

(Transcript at pp. 3-5 (emphasis supplied).) Plaintiff was present in the courtroom when this exchange occurred and raised no objection.

12.    The Transcript is clear that the only issue before the court was whether the temporary restraining order would remain in effect pending the hearing on the petition and the parties' mediation scheduled for May 27, 2009. As the Transcript reflects:

Ms. Story: And my understanding was those matters on that petition will be addressed – we have mediation set before Lee Davies on May 27, but today was the limited issue of whether or not the restraining order remains in effect pending further hearings of the court.

The Court: That's fine with me; I'll hear all of it or any piece of it that you all want me to hear.

. . .

Ms. Story: Well, I'll talk to Mr. Savoie about that but at this point I'd like to just go forward with –

Mr. Savoie: I have to travel Thursday and Friday.

6

Ms. Story: Do you want the Court to deal with all of the issues then?

Mr. Savoie: Well, I'd rather go through mediation; I mean, as a result of that we may be able to handle some of this without litigation.

The Court: All right. **So, the only issue then that's before the Court today is whether a restraining order should remain in effect pending a final hearing in this case.**

(Transcript pp. 6-8) (emphasis supplied).)

13.     At the conclusion of the hearing, Judge Martin ruled in favor of dissolving the temporary restraining order. (Transcript, p. 122.)

14.     During the hearing, the parties discussed whether the court would maintain possession of the children's passports. Counsel for Mrs. Savoie advised the court that Mrs. Savoie was scheduled to leave for Japan at the end of June 2009 and would need the children's passports in order to get the passport numbers for booking flights. Judge Martin directed that Mrs. Savoie be given the passport numbers, but specifically denied the request for the passports and they remained with the court pending the mediation or further court action. (Transcript, pp. 123-127.)

15.     Plaintiff subsequently filed a motion to recuse Judge Martin from further proceedings in the case, and a separate motion to vacate Judge Martin's order. (Amended Complaint, Factual Background ¶¶ 27-28.)

16.     On May 8, 2009, Judge Martin entered an order on the motion to vacate and on the motion to recuse.[7] He first denied the motion to vacate. (Amended Complaint, Factual Background ¶ 29.) In so doing, he specifically noted that the parties had waived any conflict of interest that might exist as a result of his prior participation in the case as a Rule 31 mediator. He

---

[7] A copy of the order is attached as <u>Exhibit 3</u> to Defendants' motion to dismiss.

further rejected Plaintiff's claim that Rule 31 deprived the court of subject matter jurisdiction over the case. Finally, Judge Martin held that Rule 31 does not stand for the proposition that a judge otherwise disqualified could not hear a matter if all parties agreed. The court stated as follows:

> Rule 31 does not reflect that the provision prohibiting a mediator from later serving as a judge cannot be waived by the parties. In fact, Cannon 3(F) Tenn. R. Sup. Ct. Rule 10 authorizes a judge disqualified by the terms of Cannon 3(E) to hear a matter if all parties agree. While the precise procedure as set forth in Cannon 3(F) was not followed, the substance of that procedure, was, in fact, followed. Having not only consented to the court's hearing this matter on March 30, 2009, but actually requesting that the court hear the matter, the court believes that to grant Dr. Savoie's motion to set aside the court's order dated April 13, 2009 would be inherently unfair in light of mediation which is scheduled to occur on May 27, 2009.

17.     Judge Martin did, however, recuse himself from any further proceedings in connection with the case. *Id.*

18.     On May 27, 2009, Plaintiff, through counsel, abandoned his effort to modify the PPP to restrict his former spouse from travelling with their minor children to Japan.  On that date, Plaintiff, through counsel, filed an agreed order that specifically reaffirmed the terms of the PPP except for minor modifications in the role of the parenting coordinator.[8]

19.     The complaint alleges that on August 12, 2009, mother violated the MDA/PPP and left the United States of America with the children with no apparent intent to return. (Amended Complaint, Factual Background ¶ 31.)

---

[8] A true and correct copy of the agreed order is attached as <u>Exhibit 4</u> to Defendants' motion to dismiss.

### III.    ARGUMENT AND LEGAL AUTHORITY

#### A.    Standard Under Fed. R. Civ. P. 12.

In two relatively recent opinions, the United States Supreme Court has clarified the standard to be applied in determining whether a complaint can survive dismissal in the face of a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Under the *Iqbal/Twombly* standard, a complaint can survive a motion to dismiss only if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a pleading. FED. R. CIV. P. 12(b)(6). A plaintiff is obligated to provide more than "labels and conclusions," more than a mere "formulaic recitation of the elements of a cause of action," in his complaint. *Twombly*, 550 U.S. at 555. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 129 S. Ct. at 1949. This new *Iqbal/Twombly* standard is designed to screen out cases that, while not utterly impossible, are "implausible." *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009).

The *Iqbal/Twombly* plausibility standard marks a significant departure from the long-standing pleading standard enunciated in *Conley v. Gibson*, 355 U.S. 41 (1957). Under the *Conley* standard, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley*, 355 U.S. at 45-46. The Supreme Court retired this notion in *Twombly* because, read literally, it seemed to permit the survival of a wholly conclusory pleading. *Twombly*, 550 U.S. at 561-63. Under the newly clarified standard, it is no longer

sufficient for a plaintiff to plead facts permitting an inference of possible misconduct. *Iqbal*, 129

S. Ct. at 1950 ("only a complaint that states a plausible claim for relief [can] survive[] a motion

to dismiss").

In *Iqbal*, the Supreme Court outlined a practical method for applying the *Twombly*

standard:

> [A] court considering a motion to dismiss can choose to begin by
> identifying pleadings that, because they are no more than
> conclusions, are not entitled to the assumption of truth. While legal
> conclusions can provide the framework of a complaint, they must
> be supported by factual allegations. When there are well-pleaded
> factual allegations, a court should assume their veracity and then
> determine whether they plausibly give rise to an entitlement to
> relief.

*Id*.

When reviewing a motion to dismiss, the District Court may not generally consider

matters beyond the allegations of the complaint or documents attached to the complaint. The

court may, however, look to certain documents outside the complaint without converting a

motion to dismiss under Fed. R. Civ. P. 12 to a motion for summary judgment under Fed. R. Civ.

P. 56 as the United States Court of Appeals for the Sixth Circuit has stated, "To resolve a

12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in

addition to the allegations in the complaint . . . [s]pecifically, on a motion to dismiss, we may

take judicial notice of another court's opinion not for the truth of the facts recited therein but for

the existence of the opinion, which is not subject to reasonable dispute over its authenticity."

*Winget v. J.P. Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008), quoting *Southern*

*Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd.* 181 F.3d 410, 426 (3rd Cir.

1999); *Buck v. Thomas M. Cooley Law School,* 597 F.3d 812, *815.

For the reasons set forth below, Plaintiff's complaint against Stites and Mr. Martin as mediator, fails to meet the standard set forth in *Twombly* and *Iqbal* and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**B.**     **Defendants Stites & Harbison, PLLC And James G. Martin, III As Mediator Are Immune From Liability For The Claims Asserted In The Complaint**

For the reasons set forth in Section C below, Plaintiff's claims are meritless and baseless in their entirety. As a threshold matter, however, the court need not even reach the merits of Plaintiff's claims because Tennessee law and federal law afford complete immunity to Mr. Martin and his former law firm for any claims arising out of or relating to his work as a court appointed mediator.

Mr. Martin's immunity from suit under Tennessee law stems from the plain language of Tennessee Supreme Court Rule 31, Section 12, which provides as follows:

> Activity of Rule 31 neutrals in the course of Rule 31 ADR proceedings shall be deemed the performance of a judicial function and for such acts Rule 31 neutrals shall be entitled to judicial immunity.

Rule 31 was enacted by the Tennessee Supreme Court in December 1995. The Court adopted the rule after years of study to establish a court-based alternate dispute resolution system on a state-wide basis. Rule 31 empowers state trial courts to order mediation and assists them in obtaining a qualified dispute resolution neutral to appoint. Rule 31 does not affect or address the private practice of alternate dispute resolution but applies only when mediation occurs pursuant to court order. *See* generally Tenn. Sup. Ct. Rule 31 § 1.

Rule 31 sets out a comprehensive mechanism for the appointment of Rule 31 neutrals. It includes various provisions that apply to all proceedings under Rule 31 (sections 3-8), provisions applicable to the conduct of dispute resolution neutrals, (sections 9-13), provisions regarding the qualification and training of neutrals (sections 14-18), and provides for the appointment of an

Alternate Dispute Resolution Commission ("ADRC") to "establish, maintain and improve the court annexed dispute resolution program in Tennessee." (Section 19.)

The judicial immunity extended to Rule 31 mediators by Rule 31, Section 12 is absolute. In *Heath v. Cornelius*, 511 S.W.2d 683 (Tenn. 1974), the Tennessee Supreme Court stated the rule applicable to judicial immunity: "The rule is that a civil action for damages will not lie against a judge of a court of general jurisdiction for his judicial acts if such acts were committed within the jurisdiction of his court. If done within his jurisdiction neither the correctness of nor motive behind the acts affects the immunity." 511 S.W.2d at 684.

In its decision, the court quoted at length from the decision of the United States Supreme Court in *Bradley v. Fisher,* 80 U.S. (13 Wall) 335, 20 L.Ed. 646 (1872):

> ". . . (Judges) of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly. A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter. Where there is clearly [*685] no jurisdiction over . . . the subject-matter, any authority exercised is a usurped authority, [**5] and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend."

511 S.W.2d at 684-684. *Accord v. Fisher,* 109 Tenn. 701, 72 S.W. 110 (1902).

Tennessee courts have expanded judicial immunity to include other "quasi judicial" officers who are involved in an integral part of the judicial process and the reasoning that such persons must be able to act freely without the threat of a lawsuit. For example, in *Ghayoumi v. McMillan*, 2006 Tenn. App. LEXIS 472 (Tenn. Ct. App. 2006) (copy attached), the Tennessee

Court of Appeals extended judicial immunity to a psychiatrist appointed by the court to conduct an assessment of a family to aid the court in determining custody and visitation decisions. In its opinion, the court cited numerous federal and state decisions extending judicial immunity to other individuals involved in the judicial process to insure that such persons could act freely without the threat of a lawsuit. After reviewing the authorities, the court noted as follows:

> These authorities have convinced us the doctrine of immunity in Tennessee should protect a psychologist appointed by the court to assist the court in the evaluation and assessment of a family in a domestic dispute so the psychologist will be free from intimidation and harassment by a dissatisfied litigant. As the other courts have warned, if these psychologists are faced with the threat of personal liability, the court appointed psychologist may be less likely to engage in frank discussions with the family he or she is directed to evaluate and less willing to offer the disinterested objective opinion the court seeks. For these reasons we find it appropriate to extend immunity to psychologists who are sued for services rendered in their capacity as agents of the court.

2006 Tenn. App. LEXIS 472 *21. *Parks v. Tennessee*, 2007 Tenn. App. LEXIS 89 *18-20 (Tenn. Ct. App. 2007) (copy attached).

In short, because the Tennessee Supreme Court has extended judicial immunity to Rule 31 neutrals, and this immunity is absolute, Mr. Martin is immune from liability for any and all actions taken by him in connection with his role as a Rule 31 mediator. To the extent that the liability of Stites & Harbison, PLLC is predicated upon the acts of Mr. Martin, then the firm is also immune. *See e.g. Reed-Baglia v. County of Summit*, 2010 U.S. Dist. LEXIS 16337, *6 (D. Ohio 2010) (copy attached) (law firm cannot be vicariously liable for acts of its principals or employees if principal is immune from liability).[9]

---

[9] Plaintiff also attempts to base his claims against Stites & Harbison, PLLC on the basis of the firm's conduct in selecting, training and supervising Mr. Martin. These claims are addressed below.

**C.** **Defendant James G. Martin, III And Stites & Harbison, PLLC Are Immune As A Matter of Federal Law.**

To the extent that federal law applies to determine Defendant's immunity from suit under Plaintiff's federal claim under 42 U.S.C. § 1983 (*see generally Martinez v. California,* 444 U.S. 277, 284 (1980)), the result is still the same. It is well-settled, as a matter of federal common law, that judges defending against Section 1983 actions enjoy absolute immunity from damages for liability for acts performed in their judicial capacities. *See e.g. Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719, 734-735 (1980) (other holdings in case superseded by statute as stated in *Collins v. Lipman*, 2005 U.S. Dist. LEXIS 11116, *8 (E.D.N.Y. 2005) (copy attached); *Stump v. Sparkman* 435 U.S. 349, 356-357 (1978); *Bradley v. Fisher*, 80 U.S. 335, 351 (1872).

Like Tennessee, federal courts have extended this form of absolute judicial immunity to certain actors outside of the judiciary when the functions in question are judicial in nature. *Butz v. Economou*, 438 U.S. 478 (1978); *Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Briscoe v. LaHue*, 460 U.S. 325 (1983). In *Butz*, the Court adopted a three-prong test for determining whether judicial immunity extends to a non-judicial official: (1) is the official's function comparable to that of a judge; (2) is the official likely to suffer harassment or intimidation as a result of performing that function; and (3) are there other procedural safeguards capable of protecting against unconstitutional conduct. 438 U.S. at 512. Federal courts have extended absolute quasi-judicial immunity to various individuals whose duties have an integral relationship with the judicial process. *See e.g. Kurzawa v. Mueller*, 732 F.2d 1456 (6th Cir. 1984) (state employees responsible for the prosecution of child neglect and delinquency petitions, psychologists and psychiatrists who examined the child, and the guardian *ad litem* for the child); *Meyers v. Franklin County Court of Common Pleas*, 81 Fed. Appx. 49 (6th Cir. 2003) (attorney representing child services agency); *Ashbrook v. Hoffman*, 617 F.2d 474 (7th Cir.

1980) (commissioners in partition cases); *Tamari v. Conrad*, 552 F.2d 778 (7th Cir. 1977) (arbitrators); *Stewart v. Minnick*, 409 F.2d 826 (9th Cir. 1969) (court reporters and clerks of court); *Cooney v. Rossiter,* 583 F.3d 967 (7th Cir. 2009) ("Guardian *ad litem* and court appointed experts, including psychiatrists, are absolutely immune from liability for damages when they act at the court's direction.")

There are very few reported cases in which federal courts have been called upon to review the immunity of court appointed mediators. Undersigned counsel is aware of only three such cases. In all three of them, the courts extended immunity to court appointed mediators. In *Wagshal v. Foster*, 28 F.3d 1249 (D.C. Cir. 1994), the plaintiff sued a court appointed mediator alleging that the mediator had forced him to accept a settlement less than he otherwise would have received. Applying the test of *Butz v. Economou*, the court held that the mediator was entitled to immunity. As for the first factor, the court held that the mediator's tasks of identifying factual and legal issues, coordinating settlement efforts and the like obviously involved substantial discretion 28 F.3d at 1252. As to the second factor, the court found that the conduct of the pretrial case evaluation and mediation also seemed likely to "inspire efforts by disappointed litigants to recoup their losses, or at any rate harass the mediator, in a second forum." 28 F.3d at 1253. As to the final factor, the court noted that *Wagshal* was free to seek relief from any misconduct by the mediator by applying to the judge who appointed him. The court further pointed to the avenues of relief institutionalized in the ADR program provided safeguards. *Id*.

Similarly, in *Joynes v. Meconi*, 2006 U.S. Dist. LEXIS 71296 (D. Del. 2006) (copy attached), the District Court in Delaware held that a mediator employed by the family court was entitled to judicial immunity. In reaching its conclusion, the court relied in part upon the

Case 3:10-cv-00327   Document 25   Filed 06/03/10   Page 15 of 21 PageID #: 291

standards set forth in *Butz v. Economou*. The court held that in performing the functions, the mediator's assigned tasks included identifying factual and legal issues, coordinating the parties' settlement efforts and attempting to settle child support issues. 2006 U.S. Dist. LEXIS 71296, *19. The court found that the second factor also weighed in favor of immunity. As the court stated, "Because the losing party cannot sue the judge, who is cloaked with judicial immunity, the mediator's decisions may prompt the party to pursue damages against her in a second forum." *Id*. Finally, the court noted that any party dissatisfied with the mediator or the results in mediation could simply request a hearing in family court to protect the party's constitutional rights. *Id*. As a result, the court found that the mediator was entitled to at least quasi judicial immunity and dismissed the claims against her.

Finally, in *Yee v. Michigan Supreme Court*, 2007 U.S. Dist. LEXIS 1793 (E.D. Mich. 2007) (copy attached), the court held that court appointed mediators who created a mediation evaluation, along with their law firm "were performing functions integral to the judicial process in fashioning a mediation award" and were therefore entitled to absolute judicial immunity. 2007 U.S. Dist. LEXIS 1793, *14.

Like the mediators in these cases, Mr. Martin was appointed by the court to perform functions in connection with the Savoie divorce that were integral to the judicial process. As to the first factor, Mr. Martin's role as a mediator included identifying factual and legal issues relevant to the underlying divorce case and coordinating settlement efforts among the parties. As to the second factor, the filing of the present action by Dr. Savoie highlights the significant risk that Rule 31 neutrals are likely to suffer harassment and intimidation as a result of the performance of their function. It is for this reason that the Tennessee Supreme Court has elected to cloak them with absolute judicial immunity.

As to the third factor, there are clearly adequate procedural safeguards in place to guard against "unconstitutional" or other improper conduct by Rule 31 neutrals. First, there is simply nothing to prevent a party dissatisfied with the conduct of a court appointed Rule 31 neutral to seek relief from the court that appointed the neutral to the case.[10] In addition, Rule 31 itself sets forth a detailed procedure for the filing of grievances against a Rule 31 neutral for alleged violations of Rule 31. The Rule provides for the filing of a grievance to a grievance committee, allows an appeal to the Alternate Dispute Resolution Commission (ADRC) appointed by the governor, and provides for the imposition of appropriate penalties on the mediator. Rule 31 § 11.

Not coincidentally, the provisions of Rule 31 that outline the procedures for grievances against Rule 31 mediators (Section 11) immediately precedes the provision (Section 12) granting immunity to Rule 31 neutrals. The two sections, construed together, make clear the Tennessee Supreme Court's intention to render Rule 31 neutrals immune from vexatious suits by disappointed litigants, while at the same time enacting procedural safeguards to insure the integrity of the mediation process. These safeguards adequately protect against unconstitutional and other improper conduct by Rule 31 neutrals. The factors that led the courts in *Wagshal, Joynes* and *Yee* to grant court appointed mediators absolute immunity apply with full force in the present action.

---

[10] In the present case, Dr. Savoie voiced no dissatisfaction with Mr. Martin's role as a mediator. His only complaint came after Judge Martin presided over the March 30th hearing and did not rule in his favor. Indeed, to the extent that Plaintiff's complaint is premised on any conduct of Mr. Martin while he was a member of Stites & Harbison, PLLC and before he was appointed to the court, his claims are time-barred pursuant to the one-year statute of limitations contained in T.C.A. § 28-3-104. Mr. Martin's participation as the mediator ended no later than December, 2008. The present action was filed on April 13, 2010.

**D.    The Complaint Fails To State A Claim Against Stites & Harbison, PLLC.**

In addition to asserting claims against Mr. Martin and his former law firm based upon Mr. Martin's conduct, the complaint also alleges that Mr. Martin's law firm, Stites & Harbison, PLLC is directly liable to Plaintiff under 42 U.S.C. § 1983 and for breach of the "mediation contract" between the Plaintiff and Stites & Harbison.

The firm's liability under 42 U.S.C. § 1983 is premised upon the firm's alleged "failure to properly select, supervise and educate Mediator Martin regarding the handling of confidential information and his restrictions relative to Rule 31 and T.C.A. § 36-4-130 and 131." (Amended Complaint Count I ¶ 2(b).) Plaintiff's breach of contract claim against Stites & Harbison alleges that Stites & Harbison entered into a contract with Dr. Savoie to perform professional services. In support of this claim, the Plaintiff alleges that he relied upon the law firm's professional expertise "as they were holding themselves out to the public as providers of Rule 31 Mediation Services." (Amended Complaint, Count VI, Breach of Contract, ¶ 3.) The complaint alleges that the firm breached its contract with Dr. Savoie "When they [*sic*] failed to properly hire, train and/or supervise Mediator Martin." (Amended Complaint, Count VI, Breach of Contract ¶¶ 4-5.)

These are precisely the type of boilerplate conclusory allegations that cannot withstand scrutiny under *Iqbal* and *Twombly*. Aside from these conclusory allegations, the complaint has alleged no facts as to how the firm's "hiring" or "selection" practices were inadequate or what "training and supervision" the firm should have provided and didn't. Moreover, when the court considers these conclusory allegations in the context of this case, it is clear that they fail to meet the "plausibility" standard outlined in *Iqbal* and *Twombly*.

First, to the extent that the allegations are premised upon a failure to "properly hire" Mr. Martin, it is important to note that Mr. Martin has practiced law with Stites & Harbison, PLLC or its predecessor firm for more than thirty (30) years prior to being appointed to the Bench. The

allegation that a law firm's hiring practices in place thirty years ago can support a "negligent hiring" claim for conduct thirty years later is the epitome of implausibility.[11] To the extent that Plaintiff refers to the firm's purported "selection" of Mr. Martin as a mediator for the Savoie case, the claim cannot stand in light of the *fact* that Mr. Martin was not "selected" to mediate the Savoie case, but was appointed to do so by the Williamson County Court. The firm had no role in Mr. Martin's "selection" as a mediator for Dr. Savoie's divorce.

Similarly, to the extent that the liability is premised upon the firm's alleged failure to insure that Mr. Martin had the proper "training" and "supervision" as a Rule 31 mediator, this allegation cannot stand in light of the fact that the standards for Rule 31 mediators are established by the Tennessee Supreme Court in Rule 31 itself. The Rule requires that any person acting as a Rule 31 mediator must first be listed by the Alternate Dispute Resolution Commission ("ADRC"). Rule 31 § 17. To be listed by the Commission, the Rule 31 mediator must comply with various qualification and training requirements set forth in Rule 31. The training courses must be approved by the Commission. *Id.*[12] In light of the fact that the Tennessee Supreme Court has established the requisite training for Rule 31 mediators, and Mr. Martin met that standard, his training was adequate – *as a matter of law.*

Finally, to the extent that the complaint alleges that the firm failed to "supervise" Mr. Martin, this claim is wholly meritless based upon the allegations pled in the complaint. It is

---

[11] Stites & Harbison PLLC is compelled to state that if necessary it would be pleased to "defend" the decision of its predecessor firm to hire Judge Martin thirty years ago. If this case were to proceed, the proof would show that at the time of his original hire, Judge Martin was a veteran of Vietnam who had been awarded the Bronze Star Medal, National Defense Service Medal and Good Conduct Medal. Upon his return, Judge Martin enrolled in Vanderbilt Law School, where he was a Patrick Wilson Scholar and ultimately received the Founder's Medal. The Patrick Wilson Scholarships are given to a select few new law students. The Founder's Medal is presented to the top graduate of the school. For the purposes of the present motion, however, the point is that the firm should not be compelled to respond to such boilerplate allegations of "negligent hiring." Absent the allegation of *facts* to show that the firm's hiring decision was negligent, the complaint wholly fails to state a claim.

[12] The Rule 31 training set forth in the Rule includes, but is not limited to, a minimum of forty (40) hours of training in sixteen (16) separate areas.

readily apparent that the complaint does not allege a single instance in which Mr. Martin took action or failed to take action in connection with the mediation or otherwise while he was a partner with Stites & Harbison, PLLC. The very first (and only) acts about which Plaintiff complains relate to actions taken Judge Martin in connection with the performance of his duties as a Judge in the 21st Judicial District of Tennessee.

In short, aside from the conclusory allegation that the firm failed to properly "hire, train and supervise" Mr. Martin, the complaint pleads no facts that could possibly support such a claim against Stites & Harbison, PLLC. Under the standard established by *Twombly* and *Iqbal*, the claims must be dismissed in their entirety.

## IV.    CONCLUSION

For all of these reasons, Plaintiff's complaint fails to state a claim against Stites & Harbison, PLLC or James G. Martin, III in his capacity as a Rule 31 mediator.  Defendants respectfully request that the claims be dismissed in their entirety.

Respectfully submitted,

s/*Garry K. Grooms*
Garry K. Grooms
Gregory D. Smith
STITES & HARBISON, PLLC
SunTrust Plaza
401 Commerce Street, Suite 800
Nashville, TN  37219-2376
Telephone:  (615) 244-5200

*Counsel for Defendant, Stites & Harbison, PLLC*

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2010, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the court's electronic filing system.

Timothy A. Tull, BPR #281113
Tull Law Firm, PLLC
5083 Main Street
Spring Hill, TN  37174

Martha A. Campbell, BPR #14022
Associate Deputy Attorney General
Civil Rights & Claims Division
Cordell Hull Building, Second Floor,
P.O. Box 20207
Nashville, TN  37214

John R. Tarpley, BPR # 09661
Lisa Ramsay Cole, BPR #16262
Lewis, King, Krieg & Waldrop, P.C.
424 Church Street, Suite 2500
P.O. Box 198615
Nashville, TN  37219-8615

s/*Garry K. Grooms*
Garry K. Grooms

855216:5:NASHVILLE