IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CHRISTOPHER JOHN SAVOIE, *et al.* ) | |
| ) | |
|     Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 3:10-0327 |
| ) | Judge Trauger |
| JUDGE JAMES G. MARTIN, III, *et al.*, ) | |
| ) | |
|     Defendants. ) | |
| ) | |

## **MEMORANDUM**

Pending before the court is the Plaintiff's Rule 60 Motion to Set Aside Order of Dismissal (Docket No. 50), to which the defendants have responded (Docket Nos. 53-55). For the reasons stated herein, this motion will be granted in part.

## **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

The factual and procedural background of this case was more fully discussed in the court's August 10, 2010 Memorandum (Docket No. 39.). As stated therein:

> The plaintiff, Christopher John Savoie, M.D., brought this suit on behalf of himself and . . . his minor children . . . .
>
> In June 2008 . . . Dr. Savoie filed for divorce in the Chancery Court of Williamson County . . . . Statutorily mandated mediation was then conducted before Mediator James G. Martin, III who, at that time, performed mediation services in conjunction with his private legal practice for the Nashville office of the law firm Stites & Harbison ("Stites"). The mediation was apparently fruitful . . . . A final decree of divorce . . . was entered . . . on January 6, 2009.
>
> After the final decree of divorce was entered, Ms. Savoie, in her communications with her ex-husband, began to make assertions and remarks that [] fueled Dr. Savoie's concern that his ex-wife was planning to abduct the children [to her native Japan]. . . . Dr. Savoie

1

maintains that some such remarks were made during court-mandated parental coordination sessions in front of defendant Celia Woolverton, who was one of the couple's court-ordered "parental coordinators." Additionally, Dr. Savoie maintains that he forwarded troubling private e-mails from his ex-wife to Woolverton to further demonstrate the risk of abduction.

In light of all of the comments, Dr. Savoie sought an emergency restraining order in Williamson County Chancery Court that would bar Ms. Savoie from traveling to Japan with the children. This order was entered by Judge Bivens on March 19, 2009, with a hearing to be held on the permanency of the travel restriction on March 30, 2009. . . .

[T]he March 30th hearing . . . was [held before] Judge James G. Martin, III, the parties' former mediator, who had [since] been appointed a state court judge. . . .

After hearing testimony from the Savoies, Woolverton and others, Judge Martin lifted the restraining order prohibiting Ms. Savoie from taking the children to Japan. . . . [and] Martin authorized the court to release to Ms. Savoie the children's passport numbers for the purposes of booking travel . . . .

On August 12, 2009, Ms. Savoie left the United States with her children "with no apparent intent to return." . . .

On March 30, 2010, the plaintiff filed this suit against (1) Martin in both his individual capacity and in his official capacity as judge and mediator, (2) Stites in its capacity as Mediator Martin's employer and (3) Celia Woolverton, in her individual capacity and in her official capacity as court-ordered parental coordinator. The plaintiff asserted state law negligence claims and claims under Section 1983 against all defendants. On April 13, 2010, the plaintiff filed his Amended Complaint, which added a breach of contract claim against Stites . . . . The plaintiff seeks money damages as well as declaratory and injunctive relief.

In early June 2010, all defendants, citing various grounds, moved to dismiss. Judge Martin primarily argued that he is entitled to dismissal on the ground of judicial immunity. . . . In a separate motion, Martin, in his capacity as mediator, and Stites moved to dismiss arguing, primarily, that Mediator Martin was immune from suit in this case and that the breach of contract claim against Stites failed to state a valid claim for relief. Woolverton argued that she is also immune from suit and that the plaintiff's Section 1983 claims against her failed because they only allege professional negligence, not more culpable conduct.

The parties agreed to extend the period of time for the plaintiff to respond to the motions to dismiss to July 11, 2010. On July 12th, instead of responding to the motions to

Case 3:10-cv-00327   Document 56   Filed 10/12/10   Page 2 of 11 PageID #: 828

dismiss, the plaintiff filed the pending motion for leave to file a Second Amended Complaint (SAC). The plaintiff requests that, (1) he be allowed to file the SAC, (2) the defendants be afforded time to supplement their pending motions to dismiss, and (3) the plaintiff then be given an opportunity to respond to the motions to dismiss. The defendants have all responded in opposition.
(Docket No. 39 at 1-6)(internal citations omitted).

The court then went on to consider whether the Motion for Leave and the proposed SAC had any impact on the arguments presented in the motions to dismiss, which, again, largely focused upon judicial and quasi-judicial immunity. (*Id.* at 6-14.) The court concluded that:

> While [in the SAC] the plaintiff has alleged additional facts that address some of the concerns raised by the defendants in motion to dismiss briefing, the plaintiff has still not effectively addressed the most central issue in that briefing, that is, judicial and quasi-judicial immunity. The plaintiff's legal conclusion in the SAC that Judge Martin engaged in conduct that is not "normally performed" by a judge is not helpful, because it is well settled that a plaintiff cannot rely on legal conclusions to get past the motion to dismiss stage. Simply alleging that the defendants do not have immunity is not sufficient to defeat the defendants' motions here. *See Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949-50 (2009).
>
> Clearly, if immunity applies to the extent argued by the defendants, on either version of the Complaint, the claims against Martin (as mediator and judge) and Woolverton are barred, along with some of the claims against Stites. Also, the two complaints have the same substantive allegations as to the claims against Stites that are not clearly impacted by the immunity argument. Therefore, the plaintiff's motion for leave to amend and the SAC, at this point, are not so much futile as they are misplaced. The defendants are either protected by immunity or they are not, and the claims against Stites are either sufficiently pled or they are not.
>
> Given the permissive nature of Rule 15(a)(2) and the lack of a clear showing of futility, the court will allow the plaintiff to file his SAC. That said, *the time has come for the plaintiff to address the arguments raised by the defendants, particularly the immunity argument*. The court will afford the defendants 14 days from the date of the filing of the SAC to supplement their pending motions to dismiss or to file notice that they do not intend to supplement the motions to dismiss. Once all defendants have filed their supplements or notices or the 14 days have passed (whichever is sooner), the plaintiff will have 14 days to file a response to the defendants' motions to dismiss (and any supplements).
> (*Id.* at 13-14.)(emphasis added)

3

The accompanying Order, which granted the Motion for Leave, stated:

> The defendants will have 14 days from the date of the filing of the Second Amended Complaint to file any supplements to their pending motions to dismiss or to notify the court that they do not intend to supplement. Once all defendants have filed their supplements or notices or the 14 days have passed (whichever is sooner), the plaintiff will have 14 days to file a response to the defendants' motions to dismiss (and any supplements).

(Docket No. 40).

On August 23, 2010, consistent with the court's Order, all defendants filed notices renewing their motions to dismiss and indicating that they did not intend to further supplement those motions. (Docket No. 41-46.) All defendants noted that the plaintiff had not formally filed the SAC in response to the court's August 10, 2010 Order, but, they renewed their motions to dismiss "out of an abundance of caution." (*Id.*)

On September 17, 2010, in light of the fact that the plaintiff did not respond to the renewed motions to dismiss within the time period prescribed by the Local Rules and the Order and had never responded to the original motions to dismiss filed in June 2010 (or filed the SAC), the court granted the renewed motions to dismiss as unopposed, dismissed this case, and entered judgment for the defendants. (Docket Nos. 47-48.)

On September 19, 2010, the plaintiff filed the pending motion and a "Second Amended Complaint," as distinguished from the SAC. (Docket Nos. 50-51.) The plaintiff indicates that, since the court's August 10, 2010 Order, he, in conjunction with counsel, had been "redraft[ing] the Complaint adding the specific language of the [March 30th hearing] transcript, details regarding the facts known to Woolverton that she withheld from the Court, and legal authority to support the claims . . . [and] identif[ying] the elements which the Plaintiff avers exclude the

4

defendants from privilege of absolute immunity." (Docket No. 50 at 5.)

The plaintiff's Rule 60 motion is supported by the affidavit of Connie Reguli, who entered an appearance on behalf of the plaintiff on September 19, 2010, the date that the motion was filed. (Docket No. 49.) Reguli states that she was "asked by Plaintiff Savoie to review his amended complaint" and, after reviewing the "amended complaint" and the August 10 Memorandum, which, she claims, did not set a "date certain" for filing the SAC, she "advised Plaintiff Savoie to redraft the complaint to comply with the specific instructions of the Court." (Docket No. 50 Ex. 1 at 1.) She claims that she was preparing to file the Second Amended Complaint when the dismissal Order was entered on September 17, 2010. (*Id.*) The Second Amended Complaint is 52 pages; that is, twice as long as the SAC, but it contains the same primary allegations. (Docket No. 51.)

## ANALYSIS

### I. The Plaintiff's Motion

In relevant part, Federal Rule of Civil Procedure 60(b) states that: "on motion and just terms, the court may relieve a party . . . from a final judgment . . . for the following reasons . . . mistake, inadvertence, surprise, or excusable neglect . . . or any other reason that justifies relief." In determining whether to grant relief in this context, courts generally consider: (1) the culpability of the movant seeking relief; (2) the prejudice to the non-movant from relief; and (3) whether the party seeking relief has a meritorious claim, which is a low bar that focuses on whether the movant has stated a claim "good at law." *Williams v. Meyer*, 346 F.3d 607, 613-14 (6th Cir. 2003). The court is to address the culpability issue first (here, phrased in terms of

5

"excusable neglect") and, then, if that element is satisfied, move on to consider prejudice and merit. *Id.*

The plaintiff maintains that the final judgment should be set aside here because the August 10, 2010 Order did not set a "date certain" to file the SAC and, in light of this, the defendants "filed their [renewed] motions prematurely and are not entitled to a judgment of dismissal." (Docket No. 50 at 8.) As to the failure to timely respond to the renewed motions, the plaintiff argues that this was "excusable neglect," as having done so, supposedly, would have been "inconsistent with the Court's order." (*Id.*)

The plaintiff argues that, even assuming that some "attorney negligence" took place in terms of failing to respond timely to the renewed motions, the lack of prejudice to the defendants, and the lack of a delay "in requesting the Court to set aside the dismissal" indicate that the "neglect" here was "excusable" and the judgment should be set aside. (*Id.* citing *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 394 (1993)). Additionally, the plaintiffs point out that "modern federal procedure favor[s a ] trial[] on the merits," rather than a proceeding "dismissed on technical imperfections." (*Id.* at 9-10); *see United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir. 1983); *Gumble v. Waterford T'ship*, 171 Fed. Appx. 502, 506 (6th Cir. 2006)(holding that Rule 60(b) decisions should be guided by "equitable principles" and "all relevant circumstances surrounding the party's omission.")

In response, the defendants make two main points. First, the August 10, 2010 Memorandum and accompanying Order were not ambiguous as to timing. (*See generally* Docket Nos. 53-55.) That is, given that the court stated that "the time has come for the plaintiff to

6

address the arguments raised by the defendants, particularly the immunity argument" and that the Motion for Leave and the SAC were "misplaced" in terms of addressing the immunity argument, the only reasonable conclusion was that the SAC was deemed filed or should have been filed immediately, so that motion to dismiss briefing could be efficiently resolved on the schedule outlined in the Order. (*See* Docket No. 53 at 3; Docket No. 54 at 3.) Moreover, even if there was an ambiguity as to timing, the Local Rules and the Order clearly dictate that the plaintiff had 14 days to respond to the renewed motions to dismiss, and the plaintiff did not respond within that time period. (Docket No. 55 at 4.)

Second, and related, nothing in the August 10, 2010 Memorandum and Order (or the Motion for Leave, for that matter) suggested that the plaintiff, upon receiving leave to amend, was entitled to edit the Complaint while ignoring the original and renewed motions to dismiss.[1] (*Id.*; Docket No. 35 at 10.) That is, as Woolverton argues, the August 10, 2010 Memorandum and Order was clearly focused on the SAC that the plaintiffs proposed to file and, in the end, imposed one clear burden on the plaintiff: "to respond to the legal arguments presented related to immunity issues, not to improperly and without leave attempt to file [another] amended complaint." (Docket No. 53 at 3.) In light of this, the defendants argue that the choices of the plaintiff and his counsel in this regard must have been "deliberate" and, therefore, "not to be relieved from." (*Id.* at 4 quoting *Ackermann v. United States*, 340 U.S. 193, 198 (1950)); *see also*

---

[1]Indeed, in the Motion for Leave, the plaintiff stated: "the plaintiffs pray that . . . the defendants be allowed 14 days *from the order granting permission to amend the complaint* to amend or supplement their motions . . . and that the plaintiff be allowed 14 days from the date of filing of defendants' supplemental and amended motions . . . to file a response." (Docket No. 35 at 10)(emphasis added).

7

*Cacevic v. City of Hazel Park*, 226 F.3d 483, 491 (6th Cir. 2000)).

Although the question is close, the neglect here was excusable. While every indication from the Memorandum and Order was that the plaintiff should immediately file the SAC so that motion to dismiss briefing would re-commerce, the Order did not explicitly say that. While it is somewhat difficult to understand how – in light of the plaintiff's own prayer in the Motion for Leave and the court's "time has come" instruction – the plaintiff could have reasonably believed that he was entitled to an essentially indefinite period to rework the SAC into the Second Amended Complaint while ignoring the pending motions, the court, again, did not explicitly order the plaintiff to file the SAC by a specific date.

The "excusable neglect" standard assumes that the party or its counsel has been "neglectful" and then considers whether that "neglect" can be reasonably excused or whether the conduct indicates an intent to "thwart" judicial proceedings or a "reckless disregard" for them. *Pioneer Inv. Servs. Co.*, 507 U.S. at 394; *Williams*, 346 F.3d at 613. Here, there was neglect by the plaintiff, but, in the absence of any clear evidence of bad faith or improper motive, the court's failure to more carefully guide the plaintiff in terms of timing renders that neglect excusable.

As to the remainder of the Rule 60(b) test, there is no showing of prejudice here. The plaintiff responded to the Order dismissing this case within two days, and the main consequence of setting aside the judgment is that the plaintiff is required to respond to the motions to dismiss – something that the defendants would have expected the plaintiff to do anyway. Finally, the plaintiff has, for purposes of the Rule 60(b) test, asserted a "meritorious" claim, in that he has asserted the Section 1983 and common law claims discussed above, which are, of course, valid

8

claims at law, distinct from whether the claims will survive the motions to dismiss. Therefore, the court will set aside the judgment entered on September 17, 2010.[2]

## II. How to Proceed

Upon setting aside the judgment, the plaintiff requests that the court allow the defendants yet another 14-day opportunity to renew their motions to dismiss in response to the Second Amended Complaint and then "the plaintiff should be provided 14 days thereafter (28 days from the filing of the Second Amended Complaint) to respond to the Motions to Dismiss." (Docket No. 50 at 11.) The court does not view this as the appropriate path.

The Second Amended Complaint, like the SAC, does not (and cannot) appropriately address the compelling judicial immunity arguments that the defendants raised in their initial motions to dismiss. Like the SAC, the Second Amended Complaint attempts to "plead around" the immunity issue by adding facts designed to underscore the alleged professional incompetence and misconduct of defendants and by asserting improper legal conclusions.[3] As indicated in the

---

[2] Mediator Martin and Stites also provide a series of cases in which the Sixth Circuit held that the district court had not abused its discretion in denying a Rule 60(b) motion where the dismissal was premised on a party's failure to respond to a motion by a court-ordered deadline. (Docket No. 55 at 3-5)(citing *Gumble*, 171 Fed. Appx. at 506; *Cacevic*, 226 F.3d at 491; *Kendall v. Hoover*, 751 F.2d 171, 175 (6th Cir. 1984)(agreeing with the district court that "the failure to respond to a motion for summary judgment or to request an extension of time to file a response thereto is inexcusable neglect")). Each of these cases was decided by the district court on its own unique facts and circumstances, and, in *Gumble* and *Cacevic* for instance, the plaintiffs had engaged in conduct that significantly exacerbated their failure to timely respond to the motion at issue, such as failing to quickly move to set aside the dismissal. Again, while the question is certainly close and there was neglect here, the neglect was excusable.

[3] As just a few examples (in a Complaint replete with unsupported legal conclusions), the Second Amended Complaint states that: (1) Mediator Martin's "immunity from civil liability applies only to those acts and omissions that might occur within the setting of the mediation and does not extend to provide broad immunity to disclosing such confidential information outside of

9

August 10, 2010 Memorandum, the only effective and legally sufficient way for the plaintiff to address the judicial immunity arguments is in a response to the motions to dismiss – not an Amended Complaint. That is, the plaintiffs need to come forth with legal authority – not legal conclusions -- sufficient to show that the defendants here are not entitled to immunity.[4]

Therefore, it is not necessary or appropriate to again place the onus on the defendants to renew

---

the proceedings," as the plaintiffs claim that Martin did while presiding over the March 30, 2009 hearing (Docket No. 51 at 4); (2) Woolverton engaged in "private conferences and strategizing testimony" with Ms. Savoie prior to the March 30th hearing and this was "not a function of her duties under the court order . . . and this conduct thus falls outside the realm of judicial and/or quasi-judicial immunity" (*Id.* at 20); (3) "the plaintiffs would show this Court that [Judge] Martin lacked jurisdiction over the subject matter and the parties to hear this matter. His lack of jurisdiction to hear this matter exempts him from judicial immunity" (*Id.* at 25-26)(concluding, again, that the Rules of the Tennessee Supreme Court that dictate that a mediator shall "refrain" from acting as a judge in the same matter are jurisdictional); (4) "the plaintiff would show that in the hearing on March 30, 2009, Judge Martin's performance cannot be protected under judicial immunity on the basis that there were functions that were normally performed by a judge . . . It is NOT the normal function of a judge to act as a neutral mediator, then preside as a judge over the same case, AND to proffer on the record and rely upon confidential unsworn information received during the course of the mediation in adjudicating the case before him." (*Id.* at 26)(emphasis in original).

[4] In both the Rule 60(b) motion and the Second Amended Complaint, there is reference to authority that the plaintiff apparently believes will be sufficient to overcome the immunity argument. For instance, the Second Amended Complaint and the motion cite Tennessee Rule of Evidence 605 for the proposition that a judge may not testify at a trial and *Vaughn v. Shelby Williams of Tenn.*, 813 S.W.2d 132 (Tenn 1991) for the proposition that a "judge is not permitted to make an investigation of a case . . . and then base a holding on the information obtained incident thereto," as, the plaintiff claims, defendant Martin did here. (Docket No. 51 at 27; Docket No. 50 at 6.) The plaintiff also repeatedly cites *Richards v. McKnight*, 88 F.3d 417 (6th Cir. 1997) for the proposition that Stites is not entitled to immunity in this case. (Docket No. 50 at 7; Docket No. 51 at 3, 42.) *Vaughn* raised issues of appropriate judicial conduct – not judicial immunity for that conduct – therefore, it is not particularly compelling. *McKnight* (usually cited as *McKnight v. Rees*) holds that "correctional officers employed by a private corporation to run a state's prison facilities" are not entitled to qualified immunity. 88 F.3d at 424. The applicability of these cases to the matter at hand appears dubious but, either way, the plaintiffs must raise such arguments in a response to the motions to dismiss.

10

their motions to dismiss.

Therefore, the case will proceed as follows: the court will deem the Second Amended Complaint (Docket No. 51) filed and also deem the motions to dismiss and renewed motions to dismiss as pending and challenging the Second Amended Complaint.[5] The plaintiffs must file their response to the arguments raised in defendants' original and renewed motions to dismiss (including, but not limited to, immunity) within 21 days of the date of the entry of the accompanying Order. In fairness to the defendants, however, the court will permit the defendants 14 days from the date of the filing of the plaintiffs' response to file optional replies.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

---

[5] While the Second Amended Complaint contains more detail than the SAC, the fundamental allegations and facts are the same. Given that immunity is the crucial issue at this stage, there appears to be no reason not to deem the Second Amended Complaint filed and allow the immunity issue, along with the other issues raised by the defendants in their motions to dismiss, to be finally resolved.

11