**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER JOHN SAVOIE,** *et al.* | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:10-0327** |
| | ) | **Judge Trauger** |
| **JUDGE JAMES G. MARTIN, III,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**<u>MEMORANDUM</u>**

Pending before the court are (1) the Renewed Motion of Stites & Harbison, PLLC and James G. Martin, III as Mediator to Dismiss (Docket No. 42), 2) Defendant Celia Woolverton's Renewed Rule 12(b)(6) Motion to Dismiss Complaint (Docket No. 44), and (3) the Renewed Motion to Dismiss of Defendant Judge James G. Martin, III (Docket No. 45). The plaintiff[1] has responded to these motions (Dockets Nos. 58-60), and the defendants have all filed replies in support (Docket Nos. 61-63). For the reasons discussed herein, these motions will be granted, and this case will be dismissed.

**<u>FACTUAL AND PROCEDURAL BACKGROUND</u>**

The factual background of this case has been addressed in two previous opinions (Docket Nos. 39 and 56.) As stated therein:

The plaintiff, Christopher John Savoie, M.D., brought this suit on behalf of himself and .

---

[1]For the sake of convenience, the court will refer to the plaintiff and the children he represents as "plaintiff."

. . his minor children . . . .

In June 2008 . . . Dr. Savoie filed for divorce in the Chancery Court of Williamson County . . . . Statutorily mandated mediation was then conducted before Mediator James G. Martin, III who, at that time, performed mediation services in conjunction with his private legal practice for the Nashville office of the law firm Stites & Harbison ("Stites"). The mediation was apparently fruitful . . . . A final decree of divorce . . . was entered . . . on January 6, 2009.

After the final decree of divorce was entered, Ms. Savoie, in her communications with her ex-husband, began to make assertions and remarks that [] fueled Dr. Savoie's concern that his ex-wife was planning to abduct the children [to her native Japan]. . . . Dr. Savoie maintains that some such remarks were made during court-mandated parental coordination sessions in front of defendant Celia Woolverton, who was one of the couple's court-ordered "parental coordinators." Additionally, Dr. Savoie maintains that he forwarded troubling private e-mails from his ex-wife to Woolverton to further demonstrate the risk of abduction.

In light of all of the comments, Dr. Savoie sought an emergency restraining order in Williamson County Chancery Court that would bar Ms. Savoie from traveling to Japan with the children. This order was entered by Judge Bivens on March 19, 2009, with a hearing to be held on the permanency of the travel restriction on March 30, 2009. . . .

[T]he March 30th hearing . . . was [held before] Judge James G. Martin, III, the parties' former mediator, who had [since] been appointed a state court judge. . . .

After hearing testimony from the Savoies, Woolverton and others, Judge Martin lifted the restraining order prohibiting Ms. Savoie from taking the children to Japan. . . . [and] Martin authorized the court to release to Ms. Savoie the children's passport numbers for the purposes of booking travel . . . .

On August 12, 2009, Ms. Savoie left the United States with her children "with no apparent intent to return." . . .

On March 30, 2010, the plaintiff filed this suit against (1) Martin in both his individual capacity and in his official capacity as judge and mediator, (2) Stites in its capacity as Mediator Martin's employer and (3) Celia Woolverton, in her individual capacity and in her official capacity as court-ordered parental coordinator. The plaintiff asserted state law negligence claims and claims under Section 1983 against all defendants. On April 13, 2010, the plaintiff filed his Amended Complaint, which added a breach of contract claim against Stites . . . . The plaintiff seeks money damages as well as declaratory and injunctive relief.

In early June 2010, all defendants, citing various grounds, moved to dismiss. Judge Martin primarily argued that he is entitled to dismissal on the ground of judicial immunity. . . .   In a separate motion, Martin, in his capacity as mediator, and Stites moved to dismiss arguing, primarily, that Mediator Martin was immune from suit in this case and that the breach of contract claim against Stites failed to state a valid claim for relief. Woolverton argued that she is also immune from suit and that the plaintiff's Section 1983 claims against her failed because they only allege professional negligence, not more culpable conduct.

(Docket No. 56 at 1-3.)

Addressing the substantive immunity arguments raised by the motions to dismiss has

been delayed by some procedural machinations the details of which are not particularly relevant

here.   It is important to note that, prior to responding to the motions to dismiss, the plaintiff filed

his Second Amended Complaint on September 19, 2010. (Docket No. 51.) While the factual

allegations against Woolverton are expanded, the substance of the Second Amended Complaint

is essentially the same as before[2], and, as the court previously stated,

The Second Amended Complaint . . .  does not (and cannot) appropriately address the compelling judicial immunity arguments that the defendants raised in their initial motions to dismiss. . . . [T]he Second Amended Complaint attempts to "plead around" the immunity issue by adding facts designed to underscore the alleged professional incompetence and misconduct of defendants and by asserting improper legal conclusions. . . . [T]he only effective and legally sufficient way for the plaintiff to address the judicial immunity arguments is in a response to the motions to dismiss. . . .  That is, the plaintiff need[s] to come forth with legal authority – not legal conclusions -- sufficient to show that the defendants here are not entitled to immunity.
(Docket No. 56 at 9-10.)

On November 2, 2010, as ordered by the court, the plaintiff filed his responses to the

---

[2]The Second Amended Complaint asserts a Section 1983 claim against all defendants, state law negligence claims against Mediator Martin, Stites, and Woolverton, and a breach of contract claim against Stites. (Docket No. 51 at 41-48.) As discussed below, the plaintiff also seeks declaratory and injunctive relief that would be consistent with his success on the underlying claims. (*Id.* at 48-49.)

motions to dismiss. (Docket No. 58-60.) The defendants have all filed their replies in support, which, again, primarily argue that they are immune from suit. (Docket Nos. 61-63.)

## ANALYSIS

The plaintiff, on behalf of himself and his allegedly kidnapped children, seeks relief against various defendants involved in the custody dispute between himself and his ex-wife. All defendants have moved to dismiss the plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6).

## I. Standard of Review

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on

"legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949-50 (2009).

## II. Judge Martin's Motion

In the August 10, 2010 Memorandum, the court discussed the arguments and issues raised by Judge Martin in his motion to dismiss:

> [T]he crux of the plaintiff's complaint against Judge Martin is that, by serving as Judge after having served as the parties' court-ordered mediator and by relying upon confidential information obtained as mediator during the March 30th hearing, Judge Martin violated the plaintiff's [] rights. . . . In support of this view, the plaintiff has consistently relied upon Tennessee Supreme Court Rule 31, Section 10(c)(1) which states that mediators, such as Martin, "shall [r]efrain" from participating as a judge or acting in a "judicial or quasi-judicial capacity" in the same matter in which the individual was mediator.
>
> In his motion, Judge Martin primarily argues that he is entitled to dismissal on the ground of judicial immunity. Indeed, Judge Martin cites numerous cases that recognize absolute immunity for judicial acts undertaken by a judge acting within his jurisdiction, including for state judges who might otherwise be subject to a Section 1983 claim or a state law tort claim for their official acts. Judge Martin contends that any failure to strictly comply with Rule 31, Section 10(c) did not deprive him of jurisdiction (and related immunity protection) because the Tennessee Supreme Court rules exist to encourage the "better disposal of business before the court," not to set jurisdictional boundaries.[3]

(Docket No. 39 at 7-9)(internal citation and quotation omitted).

In response, the plaintiff concedes that a judge, "performing his judicial functions with

---

[3] Judge Martin also argued that the plaintiff consented to his serving a dual role in this case, and he argued that the official capacity claims against him were barred by sovereign immunity. (Docket No. 21 at 20-24.) In his response, the plaintiff "concedes that he may not recover money damages from Judge Martin in his official capacity," but claims that he would be entitled to attorneys' fees if he prevailed on the injunctive and declaratory relief aspects of his claims. (Docket No. 59 at 30.)

proper jurisdiction over the matter before him, [] enjoys the privilege of absolute immunity from suit." (Docket No. 59 at 4, 20-21.)(citing *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). That is, if the judge is operating with jurisdiction and in a judicial capacity (or performing a "judicial function"), he is immune. *Id.*

The plaintiff, however, argues that Judge Martin did not have jurisdiction over this matter because "he was under a binding obligation," created by the Tennessee Supreme Court Rules and Tennessee law, "to refrain from sitting as judge in this case" and from disclosing the confidential information that he learned during the course of the mediation. (Docket No. 59 at 4.) Again, Tennessee Supreme Court Rule 31, Section 10 states that mediators "shall refrain" from later acting as judges in the same matter, and T.C.A. § 36-4-130 imposes strict confidentiality requirements on the mediator in a divorce action. The plaintiff argues that Judge Martin's alleged violation of the Tennessee Supreme Court Rules and the statute dictates that Judge Martin did not have jurisdiction over this matter for immunity purposes. (Docket No. 59 at 14.)

The plaintiff also contends that Judge Martin improperly relied on (and disclosed) confidential information obtained during the mediation and used that information to form an opinion "outside of the litigation that was before him," and that this was not a "judicial function."[4] (*Id.* at 4-5, 26.) That is, Judge Martin "relied upon confidential and privileged

---

[4]Continuing to stretch this argument, the plaintiff maintains that, by making comments and observations regarding the parties during the March 30th hearing, Judge Martin became a witness in this matter, contrary to the requirements of Tennessee Rule of Evidence 605, which forbids a judge from testifying as a witness at trial. (Docket No. 59 at 5.) There is no indication from the transcript of the March 30th proceeding that Judge Martin actually testified as a witness

information . . . gained in a private caucus," and provided his own "recollections of communications," along with judging a case that he had previously mediated, all of which, the plaintiff argues, are not "judicial functions." Therefore, the plaintiff argues, judicial immunity is not available to him. (*Id.* at 26.)

The plaintiff also relies heavily on *Harris v. Hall*, 2001 WL 1504893 (Tenn. Ct. App. Nov. 28, 2001). There, the underlying case was transferred to "a judge in another county for binding mediation," and the judge/mediator dismissed the case at the conclusion of the "binding mediation." *Id.* at *1. The appeals court determined that, not only was there no authority to order a "binding mediation," but the mediator/judge was without jurisdiction to dismiss the case. *Id.* at *4. The court, citing the version of Tennessee Supreme Court Rule 31 that was in place at the time, stated that "a judge who is acting as a mediator is not authorized to exercise judicial power with regard to the matter being mediated." *Id.* at *5. The court went on to hold that the judgment entered by the mediator was void because the mediator lacked jurisdiction over the case. *Id.* at *8; *see also Team Design v. Gottlieb*, 104 S.W.3d 512, 523-24 (Tenn. Ct. App. 2002)(also concluding that a mediator, who had been the judge over the proceeding, lacked authority to dismiss a case following a procedurally unfounded "binding mediation").

In Judge Martin's reply, he reiterates the arguments made in his initial motion. First, there is no indication that a judge's jurisdiction, provided by the Tennessee Constitution and

---

during the proceeding; rather, he, as judges often do, frequently clarified and explained the basis of his understanding of the matter to the parties before him. (Docket No. 20 Ex. A.) These clarifications and explanations were undoubtedly informed by his familiarity with the case, but there is no indication from the transcript that Judge Martin became a "witness" in the proceeding, as that term is generally understood.

state law, is removed by the failure to comply with a specific Tennessee Supreme Court Rule. (Docket No. 62 at 2.)   And, two, the function carried out by Judge Martin here, that is, conducting a hearing, must be considered a "judicial function" under any reasonable interpretation of the term.  (*Id.* at 2-3.)

Judge Martin clearly had jurisdiction and was performing a "judicial function" and is, therefore, entitled to immunity.  On the jurisdiction point, the Supreme Court has held that a judge's immunity is called into question only when he operates in a  "complete absence of all jurisdiction," such as when a probate judge "with jurisdiction over only wills and estates, should try a criminal case." *Mireles v. Waco*, 502 U.S. 9, 12 (1991); *Stump*, 435 U.S. at 357, note 7. This instance bears no resemblance to a probate judge trying a criminal case.  As a circuit court judge, Judge Martin had general jurisdiction conferred upon him by Article VI of the Tennessee Constitution and T.C.A.§ 16-10-101, and there is no indication from the authority cited that he somehow lost that jurisdiction because of any failure to comply with the Tennessee Supreme Court Rules.[5]  As Judge Martin clearly did not act in the "complete absence of all jurisdiction," the plaintiff's jurisdictional argument is without merit.

The Supreme Court rejected the plaintiff's "judicial function" argument in *Mireles.*

---

[5]Judge Martin is correct that the plaintiff has come forward with no authority even suggesting that a judge loses his subject matter jurisdiction by not abiding by certain Tennessee Supreme Court Rules.  Moreover, both the *Harris* and *Team Design* cases concern a readily distinguishable instance in which an individual, serving in his capacity as mediator, lacked authority to dismiss a case.  That is certainly not the circumstance here.  While this case undoubtedly presents somewhat unique facts, the plaintiff, despite having almost five months to respond to Judge Martin's motion, has failed to come forward with any authority supporting the proposition that a judge may lose his subject matter jurisdiction in this instance.

There, the plaintiff argued that a judge was not immune for ordering – from the bench – that two police officers go into another courtroom and aggressively seize the plaintiff (who was a lawyer practicing before the judge). 502 U.S. at 10. Similar to here, the plaintiff argued that ordering police officers to "carry out a judicial order with excessive force is not a 'function normally performed by a judge.'" *Id.* at 12. The Court rejected this approach to the "judicial function" test. That is, *Mireles* instructs that the court is not to "scrutinize" the "particular act," because "then any mistake of a judge in excess of his authority would become a 'nonjudicial' act, because an improper or erroneous act cannot be said to be normally performed by a judge." *Id.*

Indeed, the Court held that, under *Stump*, the relevant inquiry is the "nature" and "function" of the act, not "the act itself." *Id.* at 12-13. That is, "we look to the particular act's relation to a general function normally performed by a judge, in this case the function of directing police officers to bring counsel in a pending case before the court." *Id.* at 13. The Court found that this action was judicial in "nature" and "function," and, therefore, the defendant's immunity was not removed. *Id.*

Therefore, while the plaintiff challenges the manner in which Judge Martin conducted the hearing, there can be no question that Judge Martin was performing a judicial function. That is, he presided over the hearing, took evidence, and rendered a decision. As the functions performed were clearly judicial and conducted in accordance with jurisdictional authority provided by the Tennessee Constitution, Judge Martin is entitled to judicial immunity here. The

plaintiff's claims against him will be dismissed.[6]

## III. Mediator Martin's Motion

Again, in the August 10, 2010 Memorandum, the court discussed the arguments and

issues raised by Mediator Martin:

> [T]he plaintiff alleged that Mediator Martin improperly handled confidential information obtained during the mediation by releasing that information "outside the mediation process."
>
> Again, Martin argues that he is immune from suit. Mediator Martin points out that Tennessee Supreme Court Rule 31, Section 12, states that court-appointed mediators are performing "judicial functions" and should, therefore, be entitled to judicial immunity as a matter of state law. Also, Martin argues that, in *Butz v. Economou*, the Supreme Court recognized that a "quasi-judicial" official is entitled to judicial immunity so long as (1) the official's function is comparable to that of a judge; (2) the official is likely to suffer harassment or intimidation as a result of performing the function; and (3) there are other procedural safeguards to protect against improper conduct. (Docket No. 25 at 14 citing 438 U.S. 478, 512 (1978)). In addition to arguing that all three *Butz* factors are met here, Mediator Martin points to several cases in which federal courts, applying *Butz* and similar cases, have extended quasi-judicial immunity to individuals "whose duties have an integral relationship with the judicial process," including court-appointed mediators. (*Id.* at 14-15.)
>
> (Docket No. 39 at 9-10.)(internal citation and quotation omitted).

In his response, the plaintiff recognizes that both the Tennessee Supreme Court Rules and

federal law afford mediators quasi-judicial immunity. (Docket No. 58 at 14.) As mentioned

above, Tennessee Supreme Court Rule 31, Section 12 affords mediators immunity for conduct

undertaken "in the course of Rule 31 ADR proceedings," and the case law cited by the

defendants in initial briefing affords immunity for mediators and other quasi-judicial officers for

---

[6]The parties spent a considerable portion of their briefing debating whether the plaintiff consented to Judge Martin conducting the March 30th hearing. As Judge Martin is entitled to immunity in any event, it is not necessary to reach this issue.

conduct undertaken in the course of performing their duties.  (Docket No. 58 at 14-24); *see e.g.*

*Kurzawa v. Mueller*, 732 F.2d 1456, 1458 (6th Cir. 1984)(finding immunity for state employees

responsible for the prosecution of child neglect cases); *Meyers v. Franklin County Court of*

*Common Pleas*, 81 Fed. Appx. 49, 54 (6th Cir. 2003)(immunity for attorney representing child

services agency); *Yee v. Mich. Supreme Court*, 2007 WL 118931, *4-5 (E.D. Mich. Jan. 10,

2007)(immunity for court-appointed mediator).

　　　　Here, however, the plaintiff argues, Mediator Martin was not acting in his capacity as

mediator when the challenged conduct occurred.  (Docket No. 58 at 20.)  Rather, it was well

after the mediation concluded, when, in March 2009, Martin violated the Tennessee Supreme

Court Rules and Tennessee statutes by serving as a judge in the same matter that he had

mediated and by disclosing confidential and inadmissible material from those mediation

sessions.  (*Id.*)  To be clear, the plaintiff does not allege that "any conduct that occurred during

the course of the ADR proceedings [is] actionable against Mediator Martin."  (*Id.* at 24.)

Rather, the plaintiff focuses entirely on Martin's alleged breach of duties at the March 30, 2009

hearing.  (*Id.* at 25.)

　　　　In his reply, Mediator Martin argues that the plaintiff's interpretation of the immunity

rules is "convoluted" and would "effectively deprive Martin of both sources of immunity,"

judicial and quasi-judicial.  (Docket No. 63 at 2.)  That is, "it is undeniable that the conduct

about which Plaintiffs complain occurred either 'in the course of Rule 31 ADR proceedings' or

in connection with a case pending in a court in which [Martin] was the judge."  (*Id.* at 3.)  Either

way, Mediator Martin argues, there was immunity protection.  (*Id.*)

To be sure, these are unique facts, but a common sense analysis shows that Mediator Martin is entitled to immunity. That is, when in the ADR "arena," Martin had immunity protection, and, for purposes of this case, he never entered an environment without immunity protection. Rather, he went directly from the protected ADR arena to the judicial arena. The plaintiffs have not alleged that Martin engaged in any improper conduct "off the bench," and, as discussed above, the actions taken by Martin as a judge are protected by judicial immunity. Because, for purposes of the allegations here, Martin was always in an environment in which his actions were protected by immunity, Mediator Martin is entitled to immunity just as Judge Martin is, and, therefore, the claims against Mediator Martin will be dismissed.

## IV.    Celia Woolverton's Motion

In the August 10, 2010 Memorandum, the court discussed the arguments and issues raised by Woolverton:

> The crux of the plaintiff's complaint against Ms. Woolverton is that, despite having considerable information to support the notion that Ms. Savoie was going to flee the country, she "failed to act in any way to prevent the abduction of the children to Japan" and, therefore, "negligently carr[ied] out her duties as a court appointed parental coordinator."
> In response, Woolverton argued that she is also entitled to immunity as a "quasi-judicial" officer, just as Mediator Martin was, and she relied on largely the same case law that Martin did. . . . [A]s Judge Martin did, Woolverton argues that, to the extent that she is sued in her official capacity, those claims are against the State of Tennessee and are barred by the doctrine of sovereign immunity.
> (Docket No. 39 at 10-11.)(internal citation and quotation omitted).

As indicated above, the Second Amended Complaint alleges that Woolverton acted with a culpability greater than negligence, and, in his response, the plaintiff asserts that Woolverton abused her court-appointed authority by actively assisting Ms. Savoie in fleeing the country and

by failing to report to the court information related to Ms. Savoie's plans to leave the county. (Docket No. 60 at 2-3.)

On the immunity issue, the plaintiff argues that none of the cases cited by Mediator Martin and relied upon by Woolverton concerned a court-appointed "parental coordinator," and, under the *Butz* test noted above, Woolverton is not entitled to immunity. (*Id.* at 6.) Again, in *Butz v. Economou*, the Supreme Court recognized that a "quasi-judicial" official is entitled to judicial immunity where (1) the official's function is comparable to that of a judge; (2) the official is likely to suffer harassment or intimidation as a result of performing the function; and (3) there are other procedural safeguards to protect against improper conduct. (*Id.* citing 438 U.S. 478, 512 (1978)).

The plaintiff argues that Woolverton "assisted" the parties but had no "adjudicative authority in her role as parental coordinator," and "the plaintiff had no recourse to compel Defendant Woolverton to comply with her court appointed duty." (Docket No. 60 at 7.) Therefore, the plaintiff argues, Woolverton is not entitled to immunity under *Butz*.

Case law demonstrates that there is more to the immunity calculus than the plaintiff's proposed strict application of *Butz*. For instance, both parties mention the *Kurzawa* case, in which the Sixth Circuit, relying on *Butz* and the Supreme Court's more recent *Briscoe v. Lahue*, 460 U.S. 325 (1983) opinion, noted that it was well settled that "witnesses," "quasi-judicial officers" and "other persons who are integral parts of the judicial process are entitled to absolute immunity." 732 F.2d at 1458.

Applying this standard and not explicitly walking through a *Butz* three-prong test, the

court held that "state employees [] responsible for the prosecution of child neglect and delinquency petitions," a "psychologist and two psychiatrists" who had examined the child at issue pursuant to a social services investigation, and the child's guardian *ad litum* were all entitled to absolute immunity for their conduct during the social services investigation. *Id.* The court noted that it was the responsibility of these individuals "to protect the health and well-being" of children in the state and, consistent with *Butz*, "they must be able to perform the necessary tasks to achieve this goal without the worry of intimidation and harassment from dissatisfied parents." *Id.* Also, the findings of the psychologist and psychiatrists were used by social services and the state court "to determine what environment best serves the interests of the child." This "function of providing information is analogous to that of a witness" and requires immunity protection. *Id.*

The Sixth Circuit discussed *Kurzawa* in the recent *Reguli v. Guffee*, 371 Fed. Appx. 590 (6th Cir 2010) case, where, again, the court was informed by *Butz* but did not rigidly apply a three-prong test.[7] There, the court clarified that, where a social worker's actions were "only investigatory or administrative in nature, not prosecutorial, judicial, or otherwise intimately related to the judicial process," the social worker was not entitled to absolute immunity. *Id.* at 599 (quoting *Achterhof v. Selvaggio*, 886 F.2d 826, 830 (6th Cir. 1989)). Consistent with *Kurzawa*, contact with the judge, testimony in court, and "actions directly related to the court proceedings" are absolutely protected. *Id.* However, spontaneous in-home investigations and threats of removal of the children from the home were not absolutely protected, as they are

_____

[7]It appears that plaintiff's current counsel was the plaintiff in the *Guffee* case.

"outside the ambit of actions intimately involved in the judicial process." *Id.* Therefore, *Guffee* instructs that the court is to examine the character of the allegations against the quasi-judicial officer to determine their connection to the judicial process. *Id.*

The plaintiff's own allegations show that Woolverton's actions were "directly related to the court proceedings" and "intimately involved in the judicial process" such that she is entitled to absolute immunity. Generally, the Second Amended Complaint alleges that, while "parental coordinator" is an ill-defined role, it was created pursuant to court order and that Woolverton, as a "court appointee," had a continuing duty to confer with the court and to relay her concerns and important developments to the court. (*Id.* at 38.)

More specifically, the plaintiff alleges that, "during all allegations contained within this Complaint," Woolverton "served as a 'court-appointed' parent coordinator" and her functions were akin to a "social worker/counselor," aiding the Savoies in resolving their parenting issues. (Docket No. 51 at 12.) The plaintiff alleges that, in January 2009, he informed Woolverton that Ms. Savoie was not complying with the parenting plan, but Woolverton "intentionally withheld this information from the court" and assisted Ms. Savoie with her plans to leave the country by not disclosing, to the court or to the plaintiff, that the Ms. Savoie was "threatening" to leave the country.[8] (*Id.* at 16-19, 39-40.)

The plaintiff also alleges that, at the March 30th hearing, Woolverton conferred with Ms. Savoie prior to testifying, discussed her planned testimony and was "coached" by Ms. Savoie's

---

[8]The Second Amended Complaint repeatedly cites the need for discovery to confirm these allegations, which appear to be made based entirely upon "information and belief." (*Id.*)

attorney.  (*Id.* at 20.)   The Second Amended Complaint also alleges that Woolverton, without first receiving court approval, cut off contact with Mr. Savoie on May 8, 2009 and resigned her position as parental coordinator on May 11, 2009.  (*Id.* at 39.)

Based upon this review of the allegations, the plaintiff plainly alleges a direct relationship between all of Woolverton's conduct and the underlying court proceedings. Clearly, under *Guffee* and *Kurzawa*, Woolverton's testimony and conduct during the March 30, 2009 hearing is absolutely protected, and the vast majority of the plaintiff's allegations challenge Woolverton's alleged failure to "speak up" at the hearing regarding what she allegedly knew about Ms. Savoie's plans to leave the country.

Outside of court, Woolverton was still "intimately involved" with the judicial process. Her entire role was created by court order, and, according to the Second Amended Complaint, her fundamental responsibility was to remain directly connected to the court, such that, if she learned troubling information, she would report that information to the court, so that the court could adjust the parenting plan.  Unlike in *Guffee*, Woolverton was not a social worker operating on her own and conducting her own investigations.  Rather, Woolverton's role was created by the court, and it was her duty to inform the court both at hearings and as necessary of developments that might require a modification of the parenting plan.  Because Woolverton was "intimately involved with the judicial process" throughout the relevant time period, she is entitled to absolute immunity.  All claims against her will be dismissed.[9]

---

[9] As noted above, the plaintiff does not challenge that the State of Tennessee is the "true defendant" in his official capacity suits against Woolverton and Judge Martin or that the State of Tennessee is entitled to sovereign immunity as to the claims for money damages.  *Alkire v.*

## V.      Declaratory and Injunctive Relief

The plaintiff repeatedly emphasizes that the Second Amended Complaint also seeks declaratory and injunctive relief and that the plaintiff is entitled to this relief, even if the individual parties are protected by immunity.  (Docket No. 59 at 28 citing *Pulliam v. Allen*, 466 U.S. 522, 541 (1984)).

The specific requests for declaratory/injunctive relief are for the court to declare that: (1) Rule 31, Section 10 is jurisdictional, (2) "the fundamental rights of litigants can only be waived by a knowing and personal waiver before the tribunal," (3) a court-appointed parental coordinator or similar official has a duty to provide due process and a "duty to uphold the integrity of the Court's order notwithstanding any professional obligation . . . to maintain confidentiality," and (4) state courts must impose "strict protection[s]" to prevent the "involuntary removal of children . . . from the United States to Japan."  (*Id.* at 48-50.)  The plaintiff also seeks an injunction to prevent "Judges from presiding over any matter under which they served as a Rule 31 mediator."  (*Id.*)

The first request can be easily rejected, as the court has already concluded that Rule 31, Section 10 is not jurisdictional – rather, for purposes of this case, jurisdiction was provided by the Tennessee Constitution and state statute.  As to the other requests, the plaintiff never clearly explains why this case is "clearly one in which declaratory relief [would] serve a useful purpose" other than to say that it could clarify ambiguities in the Tennessee Supreme Court Rules and

---

*Irving*, 330 F.3d 802, 810 (6th Cir. 2003); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 65 (1989); T.C.A. § 20-13-102.  Therefore, these official capacity claims will also be dismissed.

clarify the responsibilities of parental coordinators.  (Docket No. 59 at 29; Docket No. 60 at 10.)

The guidelines for whether a district court should exercise jurisdiction over a declaratory judgment action are provided, on a broad level, by the Declaratory Judgment Act, which states, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.  Therefore, the Declaratory Judgment Act provides the district court with "unique and substantial discretion in deciding whether to declare the rights of litigants" and is an example of Congress's "creat[ing] an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-288 (1995).

In *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, the Sixth Circuit articulated the key criteria the district court should have in mind when deciding whether to exercise this discretion: "[t]he two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."  746 F.2d 323, 326 (6th Cir. 1984).  To assist in analyzing whether these criteria are met, the *Grand Trunk* court propounded a five-factor balancing test for the district court to use in weighing whether it should exercise its discretion and entertain a plaintiff's declaratory judgment action.  *Id.*  Those factors are: "(1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a

useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata'; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective." *Id.*

The plaintiff's requests for declaratory and injunctive relief are not appropriate under the standard addressed above and in light of the fact that the underlying state court proceedings have concluded. The proposed "strict protection" declaration and the injunction over state court judges have obvious comity problems and, again, would do nothing to protect the plaintiff's rights, given that the relevant hearing has already occurred. The "waiver" and "uphold integrity" requests raise similar concerns, and, additionally, are so vague and broad that they would clearly "improperly encroach upon state jurisdiction." The plaintiff's requests for declaratory and injunctive relief are not viable.

## VI. Stites

The Second Amended Complaint also asserts Section 1983 liability against Stites, along with a breach of contract claim and a professional negligence claim that is based, in part, upon *respondeat superior.* (Docket No. 51 at 41-48)(claiming that Stites is vicariously liable for Mediator Martin's professional negligence and that Stites breached its duty to properly train and supervise Mediator Martin).

The plaintiff's Section 1983 claim against Stites is based upon Stites's alleged failure to properly train and supervise Mediator Martin. (*Id.* at 41.) The plaintiff concedes that there is

19

"no precedence" for imposing Section 1983 liability against a private actor in this context, and the two cases cited by the plaintiff in this section of briefing, *Richardson v. McKnight*, 521 U.S. 399 (1997)(no qualified immunity for private prison guards) and *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)(private actor enforcing a "state enforced custom" could have Section 1983 liability), did not consider anything resembling the issues raised here.  (*Id;* Docket No. 58 at 27.) The plaintiff has also advanced no argument indicating that Stites should be considered a "state actor" for these purposes.  Moreover, as Section 1983 liability cannot be based upon *respondeat superior*, Section 1983 liability for the state-actor employer depends on showing that the employer has created a "policy or custom" that was the "moving force" behind a violation of the plaintiff's constitutional rights. *Memphis, Tennessee Area Local v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004). No such allegation is made in the Second Amended Complaint.  In short, the plaintiff's Section 1983 claim against Stites is misplaced and not viable.

The dismissal of the Section 1983 claim leaves only state law claims against Stites pending.  A federal district court "may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  District courts are generally considered to have broad discretion in this arena.  *See Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 233 (6th Cir. 1997); *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996).  That said, given the "constitutional and prudential limits on the use of federal judicial power," the "balance of considerations" (considerations including judicial economy, convenience, fairness, and comity) for the district court will usually point "to dismissing the state law claims" in a federal question case in which

no federal cause of action remains. *Musson*, 89 F.3d at 1254-55; *see also Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1412 (6th Cir. 1991) (finding that "overwhelming interests in judicial economy" should be in play before the district court exercises its discretion to decide a pendant state court claim after the federal claim has been dismissed pre-trial.)

As no compelling basis has been brought forth for exercising supplemental jurisdiction over these remaining claims, the court will dismiss the entire case.[10]

## CONCLUSION

For the reasons discussed herein, the defendants' renewed motions to dismiss will all be granted and this case will be dismissed in its entirety.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

---

[10]If the breach of contract and professional negligence claims against Stites could have been readily dismissed on the merits, the court, in the interests of judicial economy, would have been inclined to do so. However, Stites's defense to the breach of contract and professional negligence claims is that (1) Martin's challenged conduct occurred after he left Stites to become a state court judge and (2) the claims are "boilerplate" and do not pass muster under the *Iqbal* plausibility standard. (*See* Docket No. 63 at 6.) Simply put, there is nothing about the breach of contract and professional negligence claims that is "facially implausible" or necessarily depends on the challenged conduct having occurred while Martin was still at Stites. The plaintiff has alleged that Stites entered into a contract to provide a trained mediator and that Stites had a professional duty to provide a trained mediator. (Docket No. 51 at 45-48.) The plaintiff alleges that Stites breached the contract and breached the duty by not properly training Martin, as indicated by Martin's alleged failure to abide by the relevant rules and statutes.